POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movant*
*Mingxi Bi and Proposed Co-Lead*
*Counsel for the Class*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| KEVIN VREELAND, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>METAGENOMI INC., BRIAN C. THOMAS, PAMELA WAPNICK, JUERGEN ECKHARDT, SEBASTIAN BERNALES, RISA STACK, and WILLARD DERE,<br><br>Defendants. | Case No.: 5:24-cv-06765-EKL<br><br>REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF MINGXI BI FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL<br><br><u>CLASS ACTION</u><br><br>Date:  March 5, 2025<br>Time:  10:00 a.m.<br>Judge:  Hon. Eumi K Lee<br>Courtroom:  7 – 4th Floor |

Movant Bi[1] respectfully submits this memorandum of law in further support of his motion for appointment as Lead Plaintiff and approval of his selection of Pomerantz and BG&G as Co-Lead Counsel (Dkt. No. 12); and in opposition to Mohr's competing motion (Dkt. No. 9).

## I.    PRELIMINARY STATEMENT

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" and has made a prima facie showing of typicality and adequacy within the meaning of Rule 23.  15 U.S.C. § 77z-1(a)(3)(B)(iii).  This presumption can only be rebutted upon proof that the presumptive "most adequate plaintiff" is atypical or inadequate.  15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

Of the two competing Lead Plaintiff movants before the Court, only Bi satisfies the PSLRA's criteria for the "most adequate plaintiff" presumption.  First, Bi incurred a significant investment loss of $7,303 in connection with the Defendants' alleged violations of the federal securities laws—a loss approximately $2,300 larger than the loss of $4,980 that Mohr claims to have incurred.  Bi, not Mohr, thus possesses the "largest financial interest" in this litigation within the meaning of the PSLRA, thereby satisfying the first of the PSLRA's "most adequate plaintiff" criteria.  *See, e.g.*, *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013); *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015).

Mohr, however, disputes the quantum of Bi's investment loss, claiming that it "includes approximately $3,000 of unrecoverable losses."  Dkt. No. 15 at 1 (emphasis omitted).

---

[1] All capitalized terms herein are defined in Bi's moving brief, unless otherwise indicated.  *See* Dkt. No. 12.

1

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION – 5:24-cv-06765-EKL

Specifically, Mohr contends that Bi "cannot claim damages in connection with" any shares that Bi purchased after Metagenomi's announcement on May 1, 2024, that it had terminated its collaboration agreement with Moderna (the "May 1 Announcement"). *Id.* at 1, 3. In Mohr's view, Bi's losses are limited to the $4,030 in losses he incurred with his purchases of Metagenomi shares prior to the May 1 Announcement—a figure roughly $900 lower than Mohr's claimed financial interest. Under Mohr's novel methodology, then, Mohr—not Bi—would have the "largest financial interest" in this litigation within the meaning of the PSLRA.

Mohr's argument is without merit. Although he carefully avoids stating it in terms of either loss causation or reliance, Mohr argues, in effect, that because the termination of the Moderna agreement was public knowledge after May 1, Bi's losses on shares purchased after May 1 cannot have been caused by the false or misleading statements in Metagenomi's Prospectus, and/or that Bi cannot have relied upon the Prospectus with respect to his post-May 1 purchases. Yet it is black-letter law that ***neither loss causation nor reliance is an element of a Section 11 claim***. *See*, *e.g.*, *Scott v. ZST Digital Networks, Inc.*, 896 F. Supp. 2d 877, 883 (C.D. Cal. Aug. 7, 2012) ("to establish a *prima facie* case under Section 11, a plaintiff 'need only show a material misstatement or omission.' The plaintiff need not demonstrate scienter, reliance, or loss causation." (quoting *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381 (1983)) (internal citations omitted) (emphasis added)); *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1072 (N.D. Cal. Sept. 30, 2010) ("loss causation is not an element of a [S]ection 11 claim[.]"). Indeed, Mohr has not cited a single case where, at the lead plaintiff appointment stage of a PSLRA action alleging Securities Act claims, a court considered questions of loss causation and/or reliance in assessing the respective financial interests of competing movants, which is precisely what he asks this Court to do. Bi's investment loss, properly and accurately calculated

pursuant to the methodology plainly stated in Section 11(e) of the Securities Act, is, as Bi has consistently asserted, *$7,303*. Bi, not Mohr, thus has the largest financial interest in this litigation.

Second, as discussed in greater detail in his opposition brief, Bi has made the requisite *prima facie* showings of adequacy and typicality under Rule 23. *See generally* Dkt. No. 12 at 7-9. Mohr has not argued otherwise. Bi therefore also satisfies the second of the PSLRA's "most adequate plaintiff" criteria.

Accordingly, Bi respectfully submits that the Court should grant his motion in full and deny Mohr's competing motion.

## II.     ARGUMENT

### A.     BI DID NOT OVERSTATE HIS INVESTMENT LOSSES

In his opposition papers, Mohr claims that he, not Bi, has the largest financial interest in this litigation, arguing that Bi overstated his investment losses by improperly including losses that he incurred on Metagenomi shares purchased after the May 1 Announcement. *See generally* Dkt. No. 15 at 1, 3-4. In Mohr's view, Bi's losses are limited to the $4,030 in losses Bi incurred in connection with his purchases of Metagenomi shares prior to the May 1 Announcement. Mohr is wrong, and his argument would require the Court to significantly depart from both the well established pleading standards and loss calculation principles for Section 11 claims.

"To prevail on a Section 11 claim, a plaintiff must demonstrate (1) that the registration statement contained a misrepresentation or omission; and (2) that the misrepresentation or omission was material." *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 914 (N.D. Cal. 2015) (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005)). Significantly, "[t]he *plaintiff need not demonstrate scienter, reliance, or loss causation*." *ZST Digital Networks*, 896 F. Supp. 2d at 883 (quoting *Huddleston*, 459 U.S. at 381) (internal citations omitted) (emphasis added).

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION –
5:24-cv-06765-EKL

Likewise, Section 11(e) of the Securities Act sets out, in clear terms, the methodology for calculating investment losses caused by alleged violations of Section 11:

> A plaintiff's recoverable damages under Section 11 are determined by calculating the difference between the purchase price and, depending on the circumstances of the case, either (1) the share price on the date suit was brought, or (2) the price at which the shares were sold prior to litigation, or (3) the price at which the shares were sold during litigation.

*Marquez v. Bright Health Group, Inc.*, 22-CV-101 (AMD) (RLM), 2022 WL 1314812, at *6 (E.D.N.Y. Apr. 26, 2022) (citing 15 U.S.C. § 77k(e)).  Consistent with the elements of a Section 11 claim for liability, nothing in Section 11(e) limits a plaintiff's recoverable damages based on the timing of a plaintiff's purchases.

Here, Bi's claimed financial interest in this litigation—specifically, a monetary loss of $7,303 incurred as a result of his purchases of Metagenomi stock pursuant and/or traceable to the Company's Prospectus—is consistent with the pleading standard of Section 11 and duly applies the loss calculation methodology set forth in Section 11(e).   In seeking to serve as Lead Plaintiff, Bi adopts the allegations in the initial Complaint in this litigation, *inter alia*, to the effect that: (1) Metagenomi's registration statement and prospectus for its IPO contained misrepresentations and/or omissions; and (2) that these misrepresentations and/or omissions were material.  *See* Dkt. No. 1 ¶ 37.  Bi, like all Class members, purchased Metagenomi stock pursuant and/or traceable to the IPO's registration statement and prospectus and incurred losses when the Company's stock price declined following the IPO.  *See id.* ¶ 29.  None of these points is in dispute.

Moreover, in calculating his recoverable investment losses, Bi followed Section 11(e)'s prescribed methodology to the letter:

- On April 4, 2024, Bi purchased 488 shares priced at $10.30 each.

- On June 13, 2024, Bi purchased 818 shares priced at $6.04 each.

- Bi did not sell any of his Metagenomi shares prior to the filing of this lawsuit on September 26, 2024. Accordingly, his damages are determined by the difference between (a) the purchase prices for his shares ($10.30 for the shares purchased on April 4, and $6.04 for the shares purchased on June 13) and (b) the closing price of Metagenomi stock on September 26, 2024, the date this lawsuit was filed ($2.04).

- Using the foregoing prices, Bi lost $8.26 per share ($10.30 minus $2.04) on the 488 shares he purchased on April 4, for a total loss of $4,030.88 on those purchases ($8.26 multiplied by 488). Bi additionally lost $4.00 per share ($6.04 minus $2.04) on the 818 shares that he purchased on June 13 for a total loss of $3,272 on those purchases ($4.00 multiplied by 818). Bi's total investment losses are thus approximately ***$7,303*** ($4,030.88 plus $3,272, rounded to the nearest integer).

*See generally* Dkt. No. 12-3. Nothing in Section 11(e) required Bi to exclude the losses on the 818 shares that he purchased on June 13 simply because those purchases occurred after the May 1 Announcement.

Mohr's contrary position—namely, that any losses incurred on shares purchased ***after*** the May 1 Announcement are unrecoverable—concurrently asks the Court to graft elements of loss causation and/or reliance onto a Section 11 claim ***and*** to depart from the statutorily prescribed methodology for calculating damages for Section 11 claims. By urging the Court to disregard any losses that Bi incurred on Metagenomi stock purchases after the May 1 Announcement, Mohr argues, in effect, that these losses are not recoverable because: (1) following the May 1 Announcement, Bi cannot claim to have relied on the Defendants' false and misleading Prospectus when he purchased his shares; and/or (2) any investment losses that Bi incurred on post-May 1 purchases cannot have been caused by the false and misleading Prospectus because Bi and the market knew the truth about the Moderna contract at the time he purchased any shares following May 1. Accepting Mohr's argument would thus require the Court to add elements of loss causation and/or reliance to a Section 11 claim. Yet it is black-letter law that "to establish a *prima facie* case under Section 11, a plaintiff 'need only show a material misstatement or

omission.' ***The plaintiff need not demonstrate scienter, reliance, or loss causation***." *ZST Digital Networks.*, 896 F. Supp. 2d at 883 (quoting *Huddleston*, 459 U.S. at 381) (internal citations omitted) (emphasis added). *See also Bare Escentuals*, 745 F. Supp. 2d at 1072 ("loss causation is ***not*** an element of a [S]ection 11 claim[.]") (emphasis added); *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 546 (N.D. Cal. Feb. 4, 2009) (same); *Maeshiro v. Yatsen Holding Limited*, 22-CV-8165 (JPC) (BCM), 2023 WL 4684106, at *4 (S.D.N.Y. July 21, 2023) ("[l]oss causation is not an element of a claim under Section 11 of the Securities Act") (quoting *Bright Health*, 2022 WL 1314812, at *6).

Similarly, by asking the Court to subtract from Bi's claimed investment losses any losses incurred in connection with his post-May 1 purchases, Mohr asks the Court to depart from the plain text of Section 11(e) and limit Bi's damages to only a portion of his transactions. Courts have rejected such efforts to depart from the statutory text and apply novel methodologies. *See, e.g.*, *Lako v. Loandepot, Inc.*, No.: 8:21-cv-01449-JLS-JDE, 2022 WL 1314463, at *4 (C.D. Cal. May 1, 2022) (declining to use non-statutory loss calculation methodology proffered by movant, adopting instead "the method provided for by Section 11's measure of damages"); *Bright Health*, 2022 WL 1314812, at *6 (rejecting "newly proposed calculation method" that imposed a loss causation element as "lacking legal support" because "[l]oss causation is not an element of a claim under Section 11 of the Securities Act").

*Bright Health* is particularly instructive. There, in a PSLRA action alleging Section 11 claims, a movant, Winston Van ("Van"), claimed the largest financial interest, having incurred roughly $2.98 million in investment losses duly calculated pursuant to the methodology set forth in the Securities Action. Opposing Van's motion, one competing movant, Kaadir Herrera ("Herrera"), urged the Court to calculate Van's losses using a different methodology, reflecting

Herrera's view of what element of Van's losses ought to be considered "recoverable" in light of the timing of the corrective disclosure alleged in the Complaint:

> According to Herrera, the price decline in shares of Bright Health securities prior to the corrective disclosure on November 11, 2021 should be excluded in calculating the movants' respective losses. Under Herrera's proposed "Section 11 Recoverable Loss" calculation method, Herrera now claims to have suffered $1,449,170.76 in losses, as compared with what he calculates as Van's $844,000.00 in losses, and that therefore Herrera is the presumptively most adequate lead plaintiff.

*Id.* at *5 (internal citations omitted).

The court roundly rejected Herrera's proposed methodology, finding it to be at odds with the Securities Act and federal jurisprudence:

> Herrera's newly proposed calculation method . . . lacks legal support. ***Loss causation is not an element of a claim under Section 11 of the Securities Act.*** A plaintiff's recoverable damages under Section 11 are determined by calculating the difference between the purchase price and, depending on the circumstances of the case, either (1) the share price on the date suit was brought, or (2) the price at which the shares were sold prior to litigation, or (3) the price at which the shares were sold during litigation; loss causation is an affirmative defense to be proven by defendants, not a prima facie element to be established by plaintiffs.

*Id.* at *6 (emphases added) (internal quotations and citations omitted). The *Bright Health* court specifically contrasted recoverable damages under the Securities Act with recoverable damages under the Exchange Act, acknowledging that "courts within this Circuit ***have*** considered loss causation in selecting lead plaintiffs in ***Exchange Act cases***," by taking into account the timing of a movant's transactions relative to "the revelation of the challenged misconduct[,]" but finding that "***[n]one of the lead-plaintiff cases cited by Herrera applied that analysis to losses under Section 11.***" *Id.* at *7 (emphases added). Accordingly, rather than improperly grafting a loss-causation element onto the class's Securities Act claims and inventing a novel, counter-statutory loss calculation methodology that would take into account the timing of a movant's transactions relative to an alleged corrective disclosure, the *Bright Health* court simply calculated the

competing movants' losses per the Securities Act's plainly stated instructions and correctly found Van to have the largest financial interest.

None of the cases cited by Mohr supports his extraordinary request. Only two of the four cases that Mohr cites involved the appointment of a lead plaintiff. However, both cases implicated only Exchange Act claims, rather than Securities Act claims, and thus raised questions of loss causation and/or reliance that are absent here.[2] Meanwhile, *In re Livent Noteholder Sec. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001) and *In re Smart Techs., Inc. Sec. Litig.*, 295 F.R.D. 50 (S.D.N.Y. 2013) involved questions related to the Securities Act's pleading standard in adjudicating, respectively, a motion to dismiss and a motion for class certification, neither of which involved the appropriate calculation of damages for Securities Act claims or assessing financial interest for the purposes of lead plaintiff appointment.

In sum, there is no reason that the Court should depart from both the plain language of Section 11(e) and well settled federal securities jurisprudence by excluding from Bi's claimed financial interest the $3,272 in losses that he incurred on Metagenomi shares purchased after the May 1 Announcement. Bi's claimed investment loss of $7,303 is properly calculated pursuant to the clearly stated methodology of Section 11(e) and exceeds Mohr's own claimed loss by roughly $2,300, or almost 50%. Bi, not Mohr, thus has the largest financial interest in this litigation. Given that Bi also meets Rule 23's adequacy and typicality requirement (a point that Mohr has not so much as disputed), Bi plainly satisfies the criteria to be entitled to the PSLRA's "most

---

[2] *Sallustro v. Cannavest Corp.*, 93 F. Supp. 3d 265, 269 (S.D.N.Y. 2015) (complaints at issue "assert . . . claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934"); *Foster v. Maxwell Techs., Inc.*, No. 13-cv-00580-BEN-RBB, 2013 WL 5780424, at *2 (S.D. Cal. Oct. 24, 2013) (complaints at issue "allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934").

adequate plaintiff' presumption. This presumption in Bi's favor being unrebutted, Bi respectfully submits that the Court should appoint him to serve as Lead Plaintiff in this litigation.

## III.    CONCLUSION

For the foregoing reasons, Bi respectfully requests that the Court issue an Order: (1) appointing Bi as Lead Plaintiff for the Class; and (2) approving Bi's selection of Pomerantz and BG&G as Co-Lead Counsel for the Class.

Dated: December 16, 2024

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Movant Mingxi Bi and Proposed Co-Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484

Facsimile: (212) 697-7296
peretz@bgandg.com

*Counsel for Lead Plaintiff Movant Mingxi Bi and Proposed Co-Lead Counsel for the Class*

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION –
5:24-cv-06765-EKL

**<u>PROOF OF SERVICE</u>**

I hereby certify that on December 16, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Jennifer Pafiti*
Jennifer Pafiti

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION –
5:24-cv-06765-EKL