**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Tel: (415) 373-1671
Email: aapton@zlk.com

*Attorneys for Robert E. Mohr III*
*and Proposed Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN VREELAND, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>METAGENOMI INC., BRIAN C. THOMAS, PAMELA WAPNICK, JUERGEN ECKHARDT, SEBASTIAN BERNALES, RISA STACK, and WILLARD DERE,<br><br>Defendants. | Case No.: 5:24-cv-06765-EKL<br><br>**LEAD PLAINTIFF MOVANT ROBERT E. MOHR III'S RESPONSE TO ORDER REGARDING SUPPLEMENTAL BRIEFING [28]**<br><br>Date:  March 5, 2025<br>Time:  10:00 a.m.<br>Courtroom: 7-4th Floor<br>Judge:  Hon. Eumi K. Lee |

## I.    PRELIMINARY STATEMENT

When selecting a lead plaintiff in a PSLRA case, courts compare "financial interests" based on "recoverable losses." This is because courts "give effect to the Supreme Court's guidance in *Dura Pharmaceuticals v. Broudo*, that losses must have been proximately caused by defendants' misrepresentations." *Peters v. Twist Bioscience Corp.*, No. 5:22-cv-08168-EJD, 2023 U.S. Dist. LEXIS 131228, at *10 (N.D. Cal. July 28, 2023) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005)). Thus, the majority of Movant Minxi Bi's losses are not "recoverable losses" because they arise from purchases made after the corrective disclosure and were not proximately caused by Defendants.

A number of cases readily demonstrate this rule. For example:

- *In re Smart Techs., Inc.*, 295 F.R.D. 50, 58 (S.D.N.Y. 2013). The court limited the class definition to exclude "[a]ny investor who purchased after the November 9 corrective disclosure" because he or she "would have known of the alleged 'untruth or omission at the time of his or her acquisition of the security.'"

- *In re Adams Golf, Inc., Sec. Litig.*, No. 99-371-KAJ, 2005 U.S. Dist. LEXIS 39044, at *7-8 (D. Del. June 27, 2005). The court held the "end point for the certification of the class" was October 22 because "'a section 11 . . . claim, which is based upon a lack of information, could not be typical of such a claim made by persons who possessed additional information.'"

- *Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 521 (S.D.N.Y. 2018). The court limited the class to shareholders who purchased stock "prior to August 5, 2015" because "according to Plaintiff's own allegations, putative plaintiffs purchasing or acquiring Inovalon stock after that date would have actual knowledge of Inovalon's purported misrepresentations and omissions."

These cases along with several others (below) show the flawed logic behind Mr. Bi's argument. It is impossible for any shareholder in this case to assert claims based on purchases made after May 1, 2024 because that is when Defendants revealed the loss of its collaboration agreement with Moderna Inc. In the absence of any viable claim after May 1, 2024, Mr. Bi cannot recover damages on transactions made afterwards. Consequently, pursuant to *Dura*, Mr. Bi's "financial interest" cannot include losses from the purchases he made after May 1, 2024.

## II.    ARGUMENT

### A.    The Timing of a Shareholder's Purchase Is Critical to Any Cause of Action under the Federal Securities Laws.

While Mr. Bi agrues that "neither loss causation nor reliance is an element of a Section 11 claim" (ECF No. 27, p. 2), the timing of transactions in Section 11 claims still matters. *See In re Velti PLC Sec., Litig.*, No. 13-cv-03889-WHO, 2015 U.S. Dist. LEXIS 135004, at *88-89 (N.D. Cal. Oct. 1, 2015) (granting motion to dismiss Section 11 claims where the plaintiff failed to allege any corrective disclosure during the time it held stock and thus "cannot attribute its losses to those disclosures"); *Dean v. China Agritech, Inc.*, No. CV 11-01331-RGK (PJWx), 2011 U.S. Dist. LEXIS 124264, at *21-22 (C.D. Cal. Oct. 27, 2011) (granting motion to dismiss Section 11 claims where the plaintiff sold his stock prior to any alleged corrective disclosure and thus "on the face of the complaint, the absence of loss causation (negative causation) is apparent"). Thus, even though loss causation and reliance are not Section 11 elements, the timing of Mr. Bi's purchases and sales are still intergral to the claims. *See*, *e.g.*, *In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, No. CV 11-2768 PSG (SSx), 2012 U.S. Dist. LEXIS 208436, at *13-14 (C.D. Cal. Feb. 16, 2012) (shareholders did not have standing to pursue Section 11 claims where certifications showed they purchased stock "one full week before the IPO began and one week before the SEC declared the Registration Statement effective").

Mr. Bi is no different than a shareholder seeking to recover damages on purchases made outside of a class period in a Section 10(b) lawsuit. This issue arises when plaintiffs purchase shares while on notice of the alleged fraud. *See*, *e.g.*, *Lundy v. Ideanomics, Inc.*, No. 20 Civ. 4944 (GBD), 2020 U.S. Dist. LEXIS 236652, at *6-7 (S.D.N.Y. Dec. 16, 2020) (holding that movant was disqualified because he purchased all his class period shares after the June 25, 2020 partial corrective, thereby subjecting movant to unique defenses); *In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20 Civ. 4420 (PAE), 2020 U.S. Dist. LEXIS 169480, at *16-20 (S.D.N.Y. Sep. 16, 2020) (disqualifying movant who bought shares at same time adverse news broke); *see also Dartell v. Tibet Pharms., Inc.*, No. 14-3620, 2017 U.S. Dist. LEXIS 100872, at *12 (D.N.J. June 29, 2017) (objection to settlement overruled where shareholder purchased outside of class period). Even though this is a Section 11 lawsuit, the allegations still give rise to what effectively amounts to a class period starting with Metagenomi's IPO on February

MOVANT ROBERT E. MOHR III'S SUPPLEMENTAL BRIEF

1, 2024 and ending with the May 1, 2024 disclosure about the loss of the collaboration agreement with Moderna. Any losses incurred from transactions outside of this period are not be recoverable under Section 11 and, therefore, cannot be included in the "financial interest" evaluation.

**B.      Mr. Bi's Case Law Does Not Provide Any Basis to Include His Post-Disclsoure Losses.**

Mr. Bi cites several cases in reply holding that loss causation and reliance are not Section 11 elements. ECF No. 27 at 5-6. These cases, however, do *not* allow Mr. Bi to recover losses that are unquestionably unrelated to the allegations. Section 11's "negative causation" provision expressly confirms this point. *See* 15 U.S.C. §77k(e). Indeed, even in Section 11 actions, "[t]he Ninth Circuit has held, with respect to loss causation, that 'plaintiff must demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the plaintiff.'" *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1072 (N.D. Cal. 2010) (quoting *In re Daou Sys.,* 411 F.3d 1006, 1012 (9th Cir. 2005)); *see also In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 546 (N.D. Cal. 2009) ("defendants may assert a *lack* of loss causation as an affirmative defense. . . . District courts have dismissed Section 11 claims on the pleadings where it was apparent on the face of the complaint that the plaintiffs would be unable to establish loss causation.").

Mr. Bi's authority does not change the outcome on this issue. He cites *ZST Digital Networks* to show that a plaintiff "need not demonstrate scienter, reliance, or loss causation." *Scott v. ZST Dig. Networks, Inc.*, 896 F. Supp. 2d 877, 883 (C.D. Cal. 2012). However, the court focused on "traceability" in that case, holding that "[b]oth parties effectively concede that Plaintiff cannot, under existing precedent, trace his shares to the offering in question." *Id. at* 888. In the present case, the timing of Mr. Bi's purchases raise similar concerns; although "traeability" is not an issue, the timing of Mr. Bi's purchases make it patently clear that he will not be able to recover damages for the majority of the shares he bought because those transactions occurred after the May 1, 2024 corrective disclosure, *i.e.*, the damages are unrecoverable pursuant to Section 11's negative causation provision.

Mr. Bi similarly cites *Yatsen Holding* but the case does not contradict Mr. Mohr's argument. In pertinent part, the court in *Yatsen* held that "[i]f a lead plaintiff movant cannot recover a given loss in the action he seeks to lead, the loss cannot logically contribute to his financial stake in that action."

MOVANT ROBERT E. MOHR III'S SUPPLEMENTAL BRIEF

*Maeshiro v. Yatsen Holding Ltd.*, No. 22-CV-8165 (JPC) (BCM), 2023 U.S. Dist. LEXIS 126190, at *10 (S.D.N.Y. July 21, 2023) (internal quotations omitted). When conducting the financial interest evaluation, the court noted that one of the movant's had sold all of his shares prior to the alleged corrective disclosure. This resulted in the movant not having any recoverable losses under Section 10(b). *Id*. at *14. In passing, the court noted that the timing of the movant's sales would not interfere with his losses under Section 11. *Id*. at *10-11. Importantly, the movant in question sold his shares *before* the corrective disclosure, unlike Mr. Bi who purchased his shares *after* the corrective disclosure. This distinction is determinative. Whereas the former would not interfere with Section 11's statutory damages calculation, the latter most certainly would and in fact does here. Mr. Bi cannot claim recoverable damages on any shares purchased after May 1, 2024 because the damages are not casually related to the misrepresentations in Metagenomi's registration statement. *See* 15 U.S.C. 77k(e).

Mr. Mohr's argument is grounded in Section 11's statutory damages formula, contrary to what Mr. Bi argues. ECF No. 27 at 6-7. The cases he cites for this point are inapposite. In *Loandepot* case, the movant proposed a "novel and controversial measure of relief—Section 16 of the 1933 Act—as a separate form of relief providing the group with the greatest financial interest." *Lako v. Loandepot, Inc.*, No. 8:21-cv-01449-JLS-JDE, 2022 U.S. Dist. LEXIS 79063, at *13 (C.D. Cal. May 2, 2022). Mr. Mohr is not asking the Court to rely on a "novel and controversial" method to determine financial loss, but instead to look at the timing of Mr. Bi's Metegenomi purchases and rejecting losses that are not causally related to Defendants' misrepresentations, *i.e.*, losses from purchases made after May 1, 2024. Similarly, in *Bright Health*, the court said nothing contradictory to Mr. Mohr's arugment. Instead, the court simply rejected a "newly proposed calculation method" raised for the first time in opposition and/or reply. *Marquez v. Bright Health Grp., Inc.,* No. 22CV101AMDRLM, No. 22-CV-101 (AMD) (RLM), 2022 U.S. Dist. LEXIS 81274, at *16 (E.D.N.Y. Apr. 26, 2022). Moreover, the movant tried to game the statutory formula by favoring the number of shares purchased over the losses shareholders were entitled to receive under Section 11(e). *Id*. *18-20. Once again, unlike Mr. Bi here, none of the movants in *Bright Health* purchased shares *after* the corrective disclosure; instead, the movants had purchased their shares prior to the correcitve disclosure and held them throughout the relevant period. *Id*. at *20.

MOVANT ROBERT E. MOHR III'S SUPPLEMENTAL BRIEF

Far from trying to avoid Section 11's statutory loss formula, Mr. Mohr's argument relies heavily on it and in particular its provision regarding "negative causation." That provision states, in pertinent part, no defendant shall be liable for damages unrelated to the alleged misrepresentations in the registration statement. 15 U.S.C. §77k(e). As the above cases hold, damages that are not recoverable cannot be included in the "financial interest" analysis. The majority of Mr. Bi's losses are made up of non-recoverable losses given that they arise from shares bought *after* the May 1, 2024 corrective disclosure in this case. Under no circumstances will those damages be recoverable, meaning they should not be included in Mr. Bi's "financial interest" calculation.

## III. CONCLUSION

For the foregoing reasons, Mr. Mohr respectfully requests that this Court: (1) appoint Mr. Mohr as Lead Plaintiff for the Class in the action; (2) approve Levi & Korsinsky as Lead Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

Dated: January 10, 2025                    Respectfully submitted,

                                           **LEVI & KORSINSKY, LLP**

                                           */s/ Adam M. Apton*
                                           Adam M. Apton (SBN 316506)
                                           1160 Battery Street East, Suite 100
                                           San Francisco, CA 94111
                                           Tel: (415) 373-1671
                                           Email: aapton@zlk.com

                                           *Attorneys for Robert E. Mohr III and Proposed Lead Counsel for the Class*

MOVANT ROBERT E. MOHR III'S SUPPLEMENTAL BRIEF