# EXHIBIT A

POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movant
Mingxi Bi and Proposed Co-Lead
Counsel for the Class*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| KEVIN VREELAND, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>METAGENOMI INC., BRIAN C. THOMAS, PAMELA WAPNICK, JUERGEN ECKHARDT, SEBASTIAN BERNALES, RISA STACK, and WILLARD DERE,<br><br>Defendants. | Case No.: 5:24-cv-06765-EKL<br><br>[PROPOSED] RESPONSE OF MINGXI BI TO SUPPLEMENTAL BRIEF OF ROBERT E. MOHR III<br><br><u>CLASS ACTION</u><br><br>Date:  March 5, 2025<br>Time:  10:00 a.m.<br>Judge:  Hon. Eumi K Lee<br>Courtroom:  7 – 4th Floor |

Subject to the Court's approval, movant Bi[1] respectfully submits this memorandum of points and authorities in response to the supplemental brief filed by competing movant Mohr on January 10, 2025 (Dkt. No. 29).

## I.    PRELIMINARY STATEMENT

The only question before the Court is the appropriate measure of Bi's losses under Section 11 of the Securities Act for the specific purpose of determining whether Bi or competing movant Mohr possesses the "largest financial interest" within the meaning of the PSLRA's provisions for the appointment of a Lead Plaintiff in this litigation.  Specifically, the only point in dispute is whether Bi's loss is (1) $7,303, a figure that correctly includes all of the losses that Bi incurred in connection with his purchases of Metagenomi shares pursuant and/or traceable to the Company's February 2024 IPO, or (2) $4,030, a figure proffered by Mohr that incorrectly excludes losses that Bi incurred on the 818 shares that Bi purchased following the May 1 Announcement.  Mohr has not argued that Bi lacks standing to pursue claims in this litigation, is not a member of the putative Class, is atypical and/or inadequate under Rule 23, or is subject to any disqualifying unique defenses.

On December 27, 2024, the Court entered an Order directing Mohr to "file a supplemental brief" "identify[ing] one or more cases in which a court excluded losses on shares purchased after a corrective disclosure when determining which movant possessed the largest financial interest in a litigation" and further directing that "[i]f Mohr cannot identify such a case, Mohr shall acknowledge the lack of supporting case law in his supplemental brief."  Dkt. No. 28.  Contrary to the Court's Order, Mohr filed a supplemental brief that neither identifies any cases meeting the Court's criteria nor acknowledges the absence of such cases.  Rather, Mohn's supplemental brief simply reiterates the unavailing arguments first raised in his opposition brief, relying once again on various orders adjudicating motions to dismiss or to certify classes in Securities Act cases, or on wholly inapposite Exchange Act case law.  None of these cases involves the exclusion of losses

---

[1] All capitalized terms herein are defined in Bi's moving brief, unless otherwise indicated.  *See* Dkt. No. 12.

of a Securities Act lead plaintiff movant who purchased shares after an alleged corrective disclosure.

## II.    ARGUMENT

### A.    MOHR HAS CITED NO SUPPORT FOR HIS POSITION

Mohr's supplemental brief relies wholly on inapposite case law.  First, Mohr's preliminary statement immediately frames the inquiry incorrectly, claiming that the Court must "give effect to the Supreme Court's guidance" in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), in assessing financial interest.  Dkt. No. 29 at 1.  Yet *Dura* involved Exchange Act 10(b) claims, ***not*** Section 11 claims, and thus implicated issues of reliance and loss causation that are absent from Section 11 claims.  Notwithstanding Mohr's insistence that the Court should treat this litigation as "a Section 10(b) lawsuit"—*i.e.*, asserting that "Mr. Bi is no different than a shareholder seeking to recover damages on purchases made outside of a class period in a Section 10(b) lawsuit" and that "the allegations [in this litigation] give rise to what effectively amounts to a [Section 10(b) class period" (*id.* at 2)—the significant distinctions between Section 10(b) claims and Section 11 claims make *Dura* and the other three Exchange Act cases that Mohr cites—*Peters v. Twist Bioscience Corp.*, 2023 WL 4849431 (N.D. Cal. July 28, 2023); *Lundy v. Ideanomics, Inc.*, 2020 WL 7389027 (S.D.N.Y. Dec. 16, 2020); and *In re Hebron Tech. Co., Ltd. Sec. Litig.*, 2020 WL 5548856 (S.D.N.Y. Sept. 16, 2020*)*—wholly irrelevant to the narrow question before the Court.

Mohr's supplemental brief then pivots to the highly generalized statement that "the timing of transactions in Section 11 claims still matters" (Dkt. No. 29 at 2) and cites various cases involving Section 11 claims that supposedly illustrate this vague proposition.  Yet none of these cases has anything to do with the appropriate calculation of Bi's investment losses here.

Mohr cites three cases in which courts ruled on motions for class certification in PSLRA actions alleging Section 11 claims: *In re Smart Techs., Inc.*, 295 F.R.D. 50 (S.D.N.Y. 2013); *In re Adams Golf, Inc. Sec. Litig.*, 2005 WL 3654346 (D. Del. June 27, 2005); and *Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510 (S.D.N.Y. 2018).  Yet in each of these cases, the court considered the timing of investors' purchases only in the context of the Rule 23 typicality inquiry,

in determining the appropriate definition for the Class. None of the cases involved a determination of the appropriate measure of damages—particularly for purposes of appointing a lead plaintiff. Moreover, each of these cases was procedurally well advanced when the courts rendered their opinions. By that stage, in each case, the court-appointed lead plaintiff had filed an amended complaint, the defendants had moved to dismiss the amended complaint, the court had denied the motion(s) to dismiss, and the parties had conducted discovery. In short, each court's determinations with respect to the appropriate parameters of the classes at issue rested upon a robust record informed by a litany of factual and legal findings following extensive litigation between the parties. Here, by contrast, Mohr in effect asks the Court to determine certain parameters of the Class definition at the very outset, before the Court has even appointed a Lead Plaintiff, based solely upon the allegations in the initial 13-page Complaint prepared by Mohr's counsel that will be superseded by an Amended Complaint shortly after the Court appoints a Lead Plaintiff. Such determinations are clearly premature at this stage.

The specific facts of these three cases further illustrate why, at this stage of the proceedings, it is premature to exclude losses on shares purchased after the May 1 Announcement in assessing the competing movants' respective financial interests:

- In *Smart Techs.*, the court's decision was informed in part by the parties' agreement "that the class does not include post-November 9, 2010 purchasers." *Id.* at 58. Here, at the outset of this litigation, there is obviously no such agreement as to the definition of the class. The Lead Plaintiff's responsibility will be to pursue recovery on behalf of as inclusive a Class of investors as the facts and law will support, and any "end point" for the purposes of defining this class will thus obviously be the subject of vigorous litigation between Lead Plaintiff and Defendants. Bi respectfully submits that Mohr's evident readiness to declare the May 1 Announcement as the temporal end point of the Class definition at the outset of this litigation, before the Defendants have even begun to litigate the merits of this case, does not evince a readiness to advocate zealously on behalf of all class members.

- Meanwhile, in *Adams Golf*, the court expressly stated that setting an "end date" for the purposes of class certification was "***not*** a determination that [investors] who purchased after that date . . . do not have a claim." *Id.* at *2 (emphasis added). Mohr, by contrast, asks the Court to rule at the outset of this litigation that Bi categorically does not have a claim for damages on any of the shares that he purchased after the May 1 Announcement.

*Adams Golf* does not provide support for such an expansive finding at this early stage of the litigation.

- Finally, in *Inovalon*, the court rejected an argument by defendants that the temporal scope of the class definition should be curtailed as early as May 8, 2015—that date of a preliminary disclosure—and instead found August 5, 2015—the date of a subsequent disclosure—to be the appropriate end point. *Id.* at 521. Here, the 13-page initial Complaint (filed by Mohr's counsel) alleges only a single corrective disclosure, although as discussed *infra*, the fact that Metagenomi's stock price continued to fall by more than 50% in the three months following the May 1 Disclosure indicates that there are likely other viable corrective disclosures or theories of loss causation to allege in an Amended Complaint. The Court should at the very least wait until after a Lead Plaintiff has been appointed and filed a superseding Amended Complaint, following the opportunity to identify additional corrective disclosures, before setting the parameters of the Class in this Action.

In sum, none of these cases supports Mohr's extraordinary request that this Court—just months into this litigation, prior to the filing of an amended complaint—should definitively hold that any losses on shares purchased after the May 1 Announcement are ***not*** recoverable in this litigation.  Moreover, as the stock chart below illustrates, Metagenomi's stock price continued to decline in the weeks and months following the May 1 Announcement:



There is no reason to simply assume, as Mohr urges, that shares purchased after the May 1 Announcement cannot have been damaged by the Defendants' alleged violations of the Securities Act.  Rather, the steady decline in Metagenomi's share price is consistent with the market continuing to digest the significance of the termination of the Moderna contract to Metagenomi's business prospects, meaning that, even after the May 1 Announcement, investors continued to lose money as a result of the omissions and misrepresentations in the Company's offering documents.

Mohr also cites Section 11 cases in which courts granted motions to dismiss based on the timing of the plaintiff's stock transactions: *In re Velti PLC Sec. Litig.*, 2015 WL 5736589 (N.D. Cal. Oct. 1, 2015); *Dean v. China Agritech, Inc.*, 2011 WL 5148598 (C.D. Cal. Oct. 27, 2011); and *In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, 2012 WL 12893520 (C.D. Cal. Feb. 16, 2012). Yet in both *Velti* and *China Agritech*, the plaintiffs **sold all** of their shares **prior** to the only corrective disclosure, and those courts thus respectively found that "the defendants have an absolute negative causation defense", *Velti*, 2015 WL 5736589, at \*28, and that **none** of the plaintiffs' losses were "influenced by Defendants' alleged fraudulent conduct." *China Agritech*, 2011 WL 5148598, at \*8. Meanwhile, in *China Intelligent*, the plaintiffs were found to lack standing to sue under Section 11 because, having purchased their shares prior to the relevant IPO, the plaintiffs had "failed to plead that they purchased [China Intelligent] stock pursuant to the Offering Documents". *China Intelligent*, 2012 WL 12893520, at \*4. Here, again, Bi's standing is not at issue. It is not disputed that he purchased 1,306 shares traceable to the Company's IPO, purchased 488 of those shares prior to the May 1 Announcement, and held all 488 of those shares through the May 1 Disclosure. Nor is there any dispute as to loss causation for the $4,030 in losses that Bi incurred on those pre-disclosure purchases. The only question is whether the damages that Bi incurred in connection with the additional 818 shares that he purchased after the May 1 Announcement should be included in his "financial interest" within the meaning of the PSLRA's lead plaintiff appointment provisions. For the reasons discussed in Bi's reply brief (*see generally* Dkt. No. 27), those losses plainly comprise part of Bi's financial interest in this litigation.

Finally, Mohr cites *Dartell v. Tibet Pharms., Inc.*, 2017 WL 2815073 (D.N.J. June 29, 2017) Yet *Tibet Pharms.* stands only for the tautological proposition that an investor who purchased securities outside of the temporal parameters of a given class definition does not qualify as a member of that class. Here, Bi's status as a Class member is undisputed, and *Tibet Pharms.* is wholly irrelevant to the appropriate calculation of Bi's financial interest.

### III.    CONCLUSION

This Court ordered Mohr to "identify one or more cases in which a court excluded losses on shares purchased after a corrective disclosure" when determining the largest financial interest pursuant to the PSLRA.   Mohr has unquestionably failed to do so and therefore his motion should be denied.   Bi therefore respectfully requests that the Court issue an Order: (1) appointing Bi as Lead Plaintiff for the Class; and (2) approving Bi's selection of Pomerantz and BG&G as Co-Lead Counsel for the Class.

Dated: January 14, 2025

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Movant Mingxi Bi and Proposed Co-Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165

[PROPOSED] RESPONSE TO SUPPLEMENTAL BRIEF – 5:24-cv-06765-EKL

Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Counsel for Lead Plaintiff Movant Mingxi Bi and Proposed Co-Lead Counsel for the Class*

[PROPOSED] RESPONSE TO SUPPLEMENTAL BRIEF – 5:24-cv-06765-EKL

**PROOF OF SERVICE**

I hereby certify that on January 14, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

> */s/ Jennifer Pafiti*
> Jennifer Pafiti

[PROPOSED] RESPONSE TO SUPPLEMENTAL BRIEF – 5:24-cv-06765-EKL