JONATHAN A. SHAPIRO (SBN 257199)
*JShapiro@goodwinlaw.com*
**GOODWIN PROCTER LLP**
525 Market Street
San Francisco, CA 94105
Phone: +1 415 733 6000
Fax: +1 415 677 9041

CAROLINE H. BULLERJAHN (*pro hac vice*)
*CBullerjahn@goodwinlaw.com*
TUCKER DEVOE (*pro hac vice*)
*TDeVoe@goodwinlaw.com*
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Phone: +1 617 570 1000
Fax: +1 617 523 1231

Attorneys for Defendants:
Metagenomi, Inc., Brian C. Thomas, Pamela
Wapnick, Juergen Eckhardt, Sebastian
Bernales, Risa Stack, and Willard Dere

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN VREELAND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>METAGENOMI INC., BRIAN C. THOMAS, PAMELA WAPNICK, JUERGEN ECKHARDT, SEBASTIAN BERNALES, RISA STACK, and WILLARD DERE,<br><br>Defendants. | Case No. 5:24-cv-06765-EKL<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 9(b)**<br><br>Date:  September 10, 2025<br>Time:  10:00 am<br>Courtroom:  7 (4TH Floor)<br>Judge:  Hon. Eumi K. Lee<br>         280 South First Street<br>         San Jose, CA  95113<br><br>Complaint filed:  Sept. 26, 2024<br><br>Amended Complaint filed:  April 4, 2025 |

# TABLE OF CONTENTS

Page

INTRODUCTION.................................................................................................................1

ARGUMENT ......................................................................................................................2

    I.    Plaintiffs' Section 11 and Section 15 Claims Sound in Fraud. .................................2

    II.    The AC Does Not Plead a Claim Under Section 11. ...............................................3

        A.    The AC Fails to Allege a Materially False or Misleading Statement. ..........3

        B.    Defendants Did Not Violate Item 105...........................................................14

        C.    The AC Does Not Plead a Loss Caused by the Revelation of a "Truth" About the Challenged Statements. ...............................................................15

    III.    The AC Does Not Plead a Claim Under Section 15. .............................................15

CONCLUSION ...................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*,
    532 F. Supp. 3d 189 (E.D. Pa. 2021) ................................................................................ 14

*In re Alstom SA Sec. Litig.*,
    406 F. Supp. 2d 402 (S.D.N.Y. 2005) .................................................................................. 2

*In re Alstom SA Sec. Litig.*,
    406 F. Supp. 2d 433 (S.D.N.Y. 2005) ............................................................................. 8, 9

*In re APAC Teleservice, Inc. Sec. Litig.*,
    1999 WL 1052004 (S.D.N.Y. Nov. 19, 1999) ..................................................................... 7

*In re Axsome Therapeutics, Inc. Sec. Litig.*,
    2025 WL 965265 (S.D.N.Y. Mar. 31, 2025) ...................................................................... 11

*Berson v. Applied Signal Technology, Inc.*,
    527 F.3d 982 (9th Cir. 2008) ........................................................................................... 6, 7

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
    2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) .................................................................... 14

*Brumbaugh v. Wave Sys. Corp.*,
    416 F. Supp. 2d 239 (D. Mass. 2006) ................................................................................. 6

*Callan v. Motricity Inc.*,
    2013 WL 195194 (W.D. Wash. Jan. 17, 2013) .................................................................... 4

*Cornwell v. Credit Suisse Grp.*,
    689 F. Supp. 2d 629 (S.D.N.Y. 2010) ................................................................................. 8

*Dickerson v. MacMillan*,
    2024 WL 4219988 (N.D. Cal. Sept. 16, 2024) .................................................................... 3

*Ferraro Family Foundation, Inc. v. Corcept Therapeutics Inc.*,
    501 F. Supp. 3d 735 (N.D. Cal. 2020) .............................................................................. 14

*In re Finjan Holdings, Inc.*,
    58 F.4th 1048 (9th Cir. 2023) ............................................................................................. 3

*Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*,
    336 F. Supp. 3d 196 (S.D.N.Y. 2018) ................................................................................. 9

*Gammel v. Hewlett-Packard Co.*,
    2013 WL 1947525 (C.D. Cal. May 8, 2013) ....................................................................... 9

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
   63 F.4th 747 (9th Cir. 2023)................................................................................................ 10

*Golub v. Gigamon Inc.*,
   372 F. Supp. 3d 1033 (N.D. Cal. 2019), *aff'd*, 847 F. App'x 368 (9th Cir. 2021)..................... 9

*Greenberg v. Sunrun Inc.*,
   233 F. Supp. 3d 764 (N.D. Cal. 2017) ..................................................................................... 7

*Hoang v. ContextLogic, Inc.*,
   2023 WL 6536162 (N.D. Cal. Mar. 10, 2023) ................................................................... 2, 14

*Hoang v. ContextLogic, Inc.*,
   2024 WL 4471316 (N.D. Cal. Aug. 22, 2024)....................................................................... 15

*In re Immune Response Sec. Litig.*,
   375 F. Supp. 2d 983 (S.D. Cal. 2005) ................................................................................... 10

*In re Intuitive Surgical Sec. Litig.*,
   2017 WL 4355072 (N.D. Cal. Sept. 29, 2017)....................................................................... 14

*Kampe v. Volta Inc.*,
   2024 WL 4534732 (N.D. Cal. Oct. 21, 2024) ....................................................................... 10

*Kendall v. Odonate Theraps., Inc.*,
   2021 WL 3406271 (S.D. Cal. Aug. 4, 2021) ......................................................................... 11

*Kovtun v. VIVUS, Inc.*,
   2012 WL 4477647 (N.D. Cal. Sept. 27, 2012)....................................................................... 13

*Mallen v. Alphatec Holdings, Inc.*,
   861 F. Supp. 2d 1111 (S.D. Cal. 2012), *aff'd sub nom. Fresno Cnty. Emps.' Ret.*
   *Ass'n v. Alphatec Holdings, Inc.*, 607 F. App'x 694 (9th Cir. 2015)................................... 5, 6

*Merritt v. Molecular Partners AG*,
   2024 WL 495140 (S.D.N.Y. Feb. 5, 2024) .............................................................................. 6

*Mulderrig v. Amyris, Inc.*,
   492 F. Supp. 3d 999 (N.D. Cal. 2020) .................................................................................. 14

*Odeh v. Immunomedics, Inc.*,
   2020 WL 4381924 (D.N.J. July 31, 2020) ............................................................................ 12

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015) .............................................................................................................. 13

*In re ON24, Inc. Sec. Litig.*,
   2024 WL 979951 (N.D. Cal. Mar. 5, 2024) ........................................................................ 4, 8

*Pirani v. Slack Techs., Inc.*,
127 F.4th 1183 (9th Cir. 2025)........................................................................................ 15

*In re Portal Software, Inc. Sec. Litig.*,
2005 WL 1910923 (N.D. Cal. Aug. 10, 2005)........................................................... 10

*Rihn v. Acadia Pharms., Inc.*,
2016 WL 5076147 (S.D. Cal. Sept. 19, 2016) .......................................................... 12

*In re Sanofi Sec. Litig.*,
87 F. Supp. 3d 510 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d
199 (2d Cir. 2016) ...................................................................................................... 13

*Sinnathurai v. Novavax, Inc.*,
645 F. Supp. 3d 495 (D. Md. 2022) ........................................................................... 11

*In re STEC Inc. Sec. Litig.*,
2011 WL 2669217 (C.D. Cal. June 17, 2011).............................................................. 6

*In re Stratosphere Corp. Sec. Litig.*,
1 F. Supp. 2d 1096 (D. Nev. 1998) .............................................................................. 9

*In re Talis Biomedical Corp. Sec. Litig.*,
2022 WL 17551984 (N.D. Cal. Dec. 9, 2022) ...................................................*passim*

*Tarapara v. K12 Inc.*,
2017 WL 3727112 (N.D. Cal. Aug. 30, 2017)............................................................. 7

*In re Twitter, Inc. Sec. Litig.*,
506 F. Supp. 3d 867 (N.D. Cal. 2020), *aff'd sub nom. Weston Fam. P'ship
LLLP v. Twitter, Inc.*, 29 F.4th 611 (9th Cir. 2022) ................................................. 12

*In re Vaxart, Inc. Sec. Litig.*,
576 F. Supp. 3d 663 (N.D. Cal. 2021) ................................................................... 7, 10

*Veal v. LendingClub Corp.*,
423 F. Supp. 3d 785 (N.D. Cal. 2019) ........................................................................ 3

*Vess v. Ciba-Geigy Corp., USA*,
317 F.3d 1097 (9th Cir. 2003)..................................................................................... 2

*In re Vivendi, S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016).................................................................................... 10

*Wandel v. Gao*,
590 F. Supp. 3d 630 (S.D.N.Y. 2022)...................................................................... 14

*Waswick v. Torrid Holdings, Inc.*,
2024 WL 3740052 (C.D. Cal. July 23, 2024) .......................................................... 15

*Weiner v. Tivity Health, Inc.*,
 365 F. Supp. 3d 900 (M.D. Tenn. 2019) ...................................................................................... 7

*Yourish v. California Amplifier*,
 191 F.3d 983 (9th Cir. 1999) ....................................................................................................... 9

**Statutes**

Securities Act of 1933, 15 U.S.C. § 77k ...............................................................................*passim*

Securities Act of 1933, 15 U.S.C. § 77o ...............................................................................*passim*

**Other Authorities**

17 C.F.R. § 229.105 ........................................................................................................ 2, 3, 14, 15

Federal Rule of Civil Procedure 8 ........................................................................................... 3, 8

Federal Rule of Civil Procedure 9(b) ..................................................................................... 3, 15

Federal Rule of Civil Procedure 12(b)(6) ................................................................................... 4

**INTRODUCTION**

Plaintiffs'[1] Memorandum of Points and Authorities in Opposition to Motion to Dismiss (ECF 41, the "Opposition" or "Opp.") confirms that the AC does not adequately allege that Metagenomi's Registration Statement included any materially false or misleading statement. Rather than confront the limited statements concerning the Company's collaboration with Moderna actually contained in the Registration Statement, the Opposition takes aim at strawmen. The Opposition presupposes that the Registration Statement was riddled with "positive information," "laud[ing]" the collaboration as a "working success" (Opp. at 2, 3, 11)—all phrases ***not*** used in the Registration Statement—and from that incorrect premise argues various statements from former employee confidential witnesses (or "CWs") were improperly omitted.

In reality, no CW statement pleaded in the AC renders Metagenomi's Registration Statement misleading. The Registration Statement contained little discussion of the Moderna relationship, other than factual statements to say: (1) Metagenomi and Moderna had an agreement (the "Agreement"); (2) pursuant to the terms of the Agreement, Metagenomi and Moderna would collaborate (which they did); (3) Metagenomi and Moderna were getting close to confirming a candidate in one of their programs (the PH1 program); and (4) that Moderna could terminate the collaboration at any time for any reason. Nothing in these statements "touted" the Agreement in rosy terms or claimed every interaction between the parties was uniformly positive. In fact, the Registration Statement provided extensive risk disclosures about the possibility that Moderna (or any of Metagenomi's collaboration partners) could terminate collaboration and further explained the exact timeline in which Moderna could terminate the Agreement—following 60 days' notice that could be given for any reason. None of the CW statements or any other allegations in the AC contradict or render those limited factual representations misleading. In addition, some of the challenged statements are protected by the bespeaks caution doctrine because they were forward-looking and accompanied by meaningful cautionary language and/or constitute nonactionable

---

[1] Capitalized terms used and not defined in this Reply have the meanings assigned to them in Defendants' Memorandum of Points and Authorities (ECF 40, the "Memorandum" or "Mem."). Unless noted, internal quotations, citations, and alterations in the original are omitted, and emphasis added.

opinion, as summarized in Exhibit A to Defendants' Memorandum.

The Registration Statement's risk disclosures are also fatal to the AC's claim that the Registration Statement failed to include a "discussion of the material factors that make an investment in the registrant or offering speculative or risky" under Item 105 of Regulation S-K. The Registration Statement did not omit the risk that the Moderna collaboration might run into issues or be terminated; to the contrary, it disclosed that risk precisely. Moreover, the AC, on its face, also shows that the May 2024 announcement of the end of the collaboration did not correct the challenged statements, so no loss was caused by the purported omissions alleged in the AC.

Accordingly, the AC fails to plead a claim for violations of Sections 11 and 15 of the Securities Act of 1933 and should be dismissed.

**ARGUMENT**

The AC fails to plead a claim under Sections 11 and 15 of the Securities Act of 1933.

## I.    Plaintiffs' Section 11 and Section 15 Claims Sound in Fraud.

Plaintiffs' claims sound in fraud. A claim "sounds in fraud" if it depends on fraudulent content "as the basis of the claim." *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). The AC does just that. "Although Plaintiffs affirmatively state in the [AC] that their Securities Act claims do not sound in fraud, . . . on a more objective reading it is clear that the claims are premised on factual allegations permeated with accusations of fraudulent conduct on the part of the defendants." *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 402, 410 (S.D.N.Y. 2005), *abrogated on other grounds by Dekalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393 (2d Cir. 2016). Specifically, Plaintiffs claim that the relationship with Moderna was "a critical part of [Metagenomi's] core thesis," (Opp. at 1), that the alleged breakdown of Metagenomi's relationship with Moderna was a "*known* trend[]," (AC ¶ 68), and that "Defendants themselves were in control of [] information bearing on PH1's status and timeline," (Opp. at 22). Plaintiffs also assert a claim under Item 105, which requires them to allege that Defendants "*knew*, at the time of the IPO, but did not disclose" the purported risks. *Hoang v. ContextLogic, Inc.*, 2023 WL 6536162, at *13 (N.D. Cal. Mar. 10, 2023).

Because Plaintiffs' claim "assert[ed] that [Defendants] knew that the [statements about the

Agreement, Moderna collaboration, and PH1 program] were incorrect and that they endorsed [them]," the AC sounds in fraud. *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1057 (9th Cir. 2023); *see also Dickerson v. MacMillan*, 2024 WL 4219988, at *5 (N.D. Cal. Sept. 16, 2024) (finding Section 14(a) claim sounded in fraud because plaintiff asserted "management knew that the financial projections [] were false and were made to convince shareholders to accept the merger"). Plaintiffs may not ignore their own allegations and now claim that they nowhere argue that Defendants erred in such a "critical" aspect of Metagenomi's business purely by accident.

Thus, Plaintiffs' theory sounds in fraud and, accordingly, the AC should be reviewed under the standard articulated in Rule 9(b). *See Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 808-09 (N.D. Cal. 2019) (under Rule 9(b), "Plaintiffs must . . . clearly allege with particularity *why* the statement was false or misleading *at the time it was made*" (emphasis original)).

Even if the AC is not held to pleading with particularity under Rule 9(b), it still fails to state a claim because the allegations, taken as a whole, do not raise a plausible claim under Rule 8.

## II.    The AC Does Not Plead a Claim Under Section 11.

As explained in the Memorandum, the AC fails to state a claim for three independent reasons: (1) it does not plead that Defendants made materially misleading statements or omissions; (2) it does not plead that Defendants failed to disclose a risk factor under Item 105; and (3) it is facially apparent from the AC that Plaintiffs cannot establish loss causation. (*See* Mem. at 8-25.)

### A.    The AC Fails to Allege a Materially False or Misleading Statement.

The AC does not adequately allege that any of Defendants' statements in the Registration Statement—about the existence of the Agreement, the fact that the Agreement said Metagenomi and Moderna "will collaborate," and about the PH1 project—were false or misleading when made.

#### 1.    The AC Does Not Allege that Statements Concerning the Existence of the Agreement Were False or Misleading.

Defendants did not make a false or misleading statement about the existence of the Agreement. The Opposition does not even purport to argue that the Agreement had ended at the time of Metagenomi's IPO. The Opposition's statement that "the relationship between Metagenomi was over in all ways except in name only" (Opp. at 11), is nothing more than pure

speculation with a rhetorical flourish.  Indeed, the AC itself confirms that the Agreement with Moderna had not ended by the time of the IPO.  (*See* AC ¶ 53 (CW2 confirms that "the partnership with Moderna ended in May"); *id.* ¶ 47 (claiming meetings stopped at some point in "February *or March*," not before mid-February IPO).)  And though the Opposition quotes CW5's unsupported opinion that the project "was dead in the water" by November 2023, (Opp. at 1, 4, 15 (quoting AC ¶ 48)), it ignores that the *AC itself* contradicts this assertion.  CW2 reported multiple "productive" bi-weekly meetings beginning in October 2023, with deterioration only starting in 2024.  (AC ¶ 45.)  As the Memorandum explained "the Court is not required to accept such internally inconsistent and vague allegations."  *In re ON24, Inc. Sec. Litig.*, 2024 WL 979951, at *7 (N.D. Cal. Mar. 5, 2024) (rejecting CW allegations and dismissing Section 11 claim).  (*See* Mem. at 13-15.)  Plaintiffs have no answer to *ON24*; the Opposition does not even address it.  Plaintiffs may wish they had a case where the Agreement was *de facto* terminated, but the AC pleads the opposite.  (*See also* Mem. at 14.)[2]

To the extent Plaintiffs suppose a disclosure about the *existence* of a contract necessarily requires a disclosure of every aspect of the *working relationship* between the parties to the contract, that supposition is unfounded.  *Callan v. Motricity Inc.*, 2013 WL 195194 (W.D. Wash. Jan. 17, 2013) is instructive.  There, the Court found that reference to "an agreement . . . was not false or misleading when made" for failure to disclose negative information (that the contract was unprofitable) because defendants had no "duty to include further details about [the agreement] in the Registration Statement."  *Id.* at *12.  The Opposition attempts to distinguish *Motricity* by arguing that the AC asserts that the negative information here was somehow "knowable at the time of the IPO," (Opp. at 13), but that argument fails.  The *Motricity* Court found in favor of the defendants, stating that there was no duty to disclose additional details "*[f]or this reason alone*"— before addressing whether the negative information was "knowable."  *Motricity*, 2013 WL 195194, at *12.  Disclosing that a contractual relationship exists does not create a duty to disclose

---

[2] Although Defendants have not expressly asserted lack of materiality as a Rule 12(b)(6) argument, (*cf.* Opp. at 17), Defendants reserve the right to challenge Plaintiffs on that element of their claim, or any other, at an appropriate time at a later stage in the proceedings, if necessary.

the details of the relationship between the parties or the performance of that agreement.

A duty to disclose will only arise if the omitted information would have dispelled "a false or misleading impression." *Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1130 (S.D. Cal. 2012), *aff'd sub nom. Fresno Cnty. Emps.' Ret. Ass'n v. Alphatec Holdings, Inc.*, 607 F. App'x 694 (9th Cir. 2015). There is no such impression here. The Opposition's argument that Metagenomi was "bound" to "disclos[e] adverse information that cuts against the positive information," (Opp. at 9), overreads the Registration Statement's *actual* statements about the Agreement. Rather than provide misleading impressions, all the Registration Statement did was disclose the existence of the Agreement and its terms, including that Moderna could terminate the Agreement at any time and for any reason. (AC ¶ 30.) Along with warnings about potential termination of the Agreement, the Registration Statement also warned investors that "disagreements with collaborators, including disagreements over . . . the preferred course of development, might cause delays or terminations of the research, development or commercialization of product candidates." (AC, Ex. 2 at 56.) Far from giving an impression that no bumps could arise in the collaboration, the Registration Statement warned of it explicitly.

The Opposition's characterizations are simply inconsistent with the actual language of the Registration Statement which consisted of neutral, factual statements about the Agreement. (*Compare* Opp. at 1 ("As the IPO offering documents touted . . .") *with* AC ¶ 30 ("On October 29, 2021, . . . we entered into a Strategic Collaboration and License Agreement (the 'Moderna Agreement') with Moderna").) Defendants' supposed buoyant characterizations are found nowhere in the Registration Statement. (*Compare* Opp. at 1, 2 (calling the collaboration "productive") *with* AC ¶ 30-32 (describing the Agreement without adjectives, including "productive").) In fact, the only alleged positive characterizations about the Agreement were those made by third-party analysts and news outlets based solely on the existence of the Agreement. (*See* Opp. at 5 (citing to AC ¶ 55); AC ¶ 55 (alleging that "analysts and news outlets reported . . .").) The Registration Statement did not generate some misleading "touting" impression for which there was any additional duty to disclose more information.

The Opposition's cases are distinguishable because, there, plaintiffs alleged that the

defendants made positive statements about the agreements themselves, *see Brumbaugh v. Wave Sys. Corp.*, 416 F. Supp. 2d 239, 246 (D. Mass. 2006) (defendants stated that partnership would "significantly help [them] in [their] objective"), or contained straightforward factual misrepresentations, such as falsely implying a contract had implications for future sales when it was, instead, a one-off transaction, *see In re STEC Inc. Sec. Litig.*, 2011 WL 2669217, at *6 (C.D. Cal. June 17, 2011). The same is not true of the Registration Statement, and moreover, it expressly disclosed that the Agreement could be terminated at any time for any reason.

For these reasons, none of the AC's allegations from the former employee CWs were required to be disclosed. Their various opinions, speculation, and anecdotes, even putting aside their internal contradictions, would do nothing to correct Defendants' down-the-middle statement that Metagenomi "entered into a[n] . . . Agreement" with Moderna. (*See* AC ¶ 30.) *See Alphatec*, 861 F. Supp. 2d at 1130 (no false or misleading statement because the plaintiffs' allegations were not "inconsistent with the company's statement"). The Opposition fails to distinguish *Alphatec*. (*See* Opp. at 14.) *Merritt v. Molecular Partners AG*, 2024 WL 495140 (S.D.N.Y. Feb. 5, 2024) is similarly on point. There, the plaintiff alleged that statements about an agreement were false or misleading because the defendant was aware of facts that "materially increase[d] the likelihood of [the partner's] termination of the [] Agreement," including the impending expiration of a license and increased competition. *Id.* at *2. The Court there disagreed with the plaintiff and found that there was no duty to disclose because defendants' statements about the agreement were opinions, which were "not necessarily misleading" merely because defendants "kn[ew], but fail[ed] to disclose, some fact cutting the other way." *Id.* at *8. The same reasoning applies here. In any event, Plaintiffs have also "failed to allege facts showing a serious conflict between [Defendants]' expectations regarding the [] agreement and the allegedly omitted facts." (*See* Opp. at 14 (citing *Molecular Partners*, 2024 WL 495140, at *5).)

While the CWs claim some friction between Moderna and Metagenomi, Defendants did not make any statement in the Registration Statement that work under the Agreement was frictionless. (*See generally* AC, Ex. 2.) And the "unhapp[iness]" reported in the AC does not mean the Agreement was destined for termination. Unlike *Berson v. Applied Signal Technology*,

*Inc.*, 527 F.3d 982, 985 (9th Cir. 2008), where plaintiff alleged that defendants received stop work orders, the AC alleges the opposite; the Metagenomi and Moderna Agreement continued until May 2024, there were no formal orders to stop working, and meetings plausibly continued (as pled in the AC) into March 2024. (*See* AC ¶¶ 47, 53.) The Registration Statement did not need to disclose "rumblings of . . . change, material or otherwise" that may potentially occur at some point in the future after the IPO. *Greenberg v. Sunrun Inc.*, 233 F. Supp. 3d 764, 772 (N.D. Cal. 2017).

Plaintiffs' other cases are also distinguishable, and involve either affirmative misstatements of capabilities or concrete rejections of the partnership in question. *See, e.g.*, *In re Vaxart, Inc. Sec. Litig.*, 576 F. Supp. 3d 663, 670-72 (N.D. Cal. 2021) (plaintiffs alleged that defendants knowingly misled investors by implying its partner organization could produce "one billion vaccine doses per year" but actually lacked the ability to produce even one); *In re APAC Teleservice, Inc. Sec. Litig.*, 1999 WL 1052004, at *3, *6 (S.D.N.Y. Nov. 19, 1999) (defendant's "failure to comply with [its largest client's] requirements was extensively documented" and led the client "to cut [defendant's] invoices"); *Tarapara v. K12 Inc.*, 2017 WL 3727112, at *4, *15 (N.D. Cal. Aug. 30, 2017) (defendants knew a contract would not be renewed because the partner "had informed [the company] almost two years earlier that it intended not to renew the [] contract"); *Weiner v. Tivity Health, Inc.*, 365 F. Supp. 3d 900, 913 (M.D. Tenn. 2019) (defendants falsely claimed contract renewal was "completed on favorable terms" when in fact the "contract terms . . . were less favorable than before").

> **2. Statements that Metagenomi and Moderna "Will Collaborate" Are Not Alleged to be False or Misleading and Are Protected by the Bespeaks Caution Doctrine.**

Plaintiffs' claims premised upon Defendants' statements about the terms in the Agreement that Metagenomi and Moderna "will collaborate" fail because (1) they are not alleged to be false or misleading and (2) they are protected by the bespeaks caution doctrine.

> *a. No False or Misleading Statement.*

Defendants' statements that Metagenomi and Moderna "will collaborate," (AC ¶ 30), are not adequately alleged to be false or misleading under either a misstatement or omission theory.

The statements were accurate descriptions of the Agreement.  (*See* AC ¶ 30 ("*Under the terms of the Moderna Agreement*, we and Moderna will collaborate . . .").)  And nothing in the AC's allegations of alleged strain in the Metagenomi/Moderna relationship suggest that this term was not in the Agreement or that at the time of the IPO, Metagenomi and Moderna would *not* collaborate in the future (including between the IPO and the Agreement's termination).  (Mem. at 11-12.)  Instead, Plaintiffs rely on CW allegations to try to argue that Metagenomi had some duty to disclose the alleged tension or disfunction between the parties.  This attempt fails.

The Opposition does not directly address the Memorandum's arguments that the CW allegations are impermissibly "conclusory, state opinions without factual support, sometimes based on vague hearsay and rumors, and are often vague or silent as to time period," (Mem. at 12-15 (citing *In re Talis Biomedical Corp. Sec. Litig.*, 2022 WL 17551984, at *12 (N.D. Cal. Dec. 9, 2022) and *ON24*, 2024 WL 979951, at *6-7)), and instead dismisses the argument as Defendants "ask[ing] the Court to ignore CW allegations," (Opp. at 15).  But the burden is on *Plaintiffs* to plead plausible facts in the first instance, and as *Talis* and *ON24* make clear, vague, conclusory, and contradictory CW allegations "do not meet Rule 8 as explicated in *Iqbal* and *Twombly*."  *Talis*, 2022 WL 17551984, at *12.  The Opposition attempts to distinguish *Talis* by arguing that, there, "the CW allegations . . . lack[ed] any specific facts" (Opp. at 14), but the same is true here.  The "specific facts" pled in the AC do not "show[] that, at the time of the IPO, the Moderna collaboration was over."  (*See id.*; *cf.* Mem. at 8-15.)  All the allegations show is that the collaboration was experiencing challenges.  (*See* Mem. at 13-14 (summarizing CW allegations).)

Moreover, the CW's "lack of specificity . . . does not suggest that [the disagreements between Metagenomi and Moderna] were so widespread or done at such scale" to sustain the unsupported conclusions that a "lot of people . . . knew." (*See* Opp. at 15.)  Both of Plaintiffs' cited cases with "widespread knowledge" allegations arose in vastly different circumstances.  (*Id.* at 15 (citing *Cornwell v. Credit Suisse Grp.*, 689 F. Supp. 2d 629 (S.D.N.Y. 2010) and *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005)).) The Court in *Cornwell* could accept allegations about "widespread knowledge" only because the complaint also alleged multiple specific reports presented to executives highlighting issues.  689 F. Supp. 2d at 637-38.  Nothing

similar appears here.  *See Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 224 (S.D.N.Y. 2018) (distinguishing *Cornwell* on this basis).  *Alstom* concerned a separate legal question (whether the complaint pled culpable participation for a claim under Section 20(a) of the Securities Exchange Act) and there too, the complaint pled facts of specific announcements and accounting data underpinning the widespread knowledge.  406 F. Supp. 2d at 504.

Finally, the time between Metagenomi's IPO and the termination of the Agreement does not support Plaintiffs' claim.  Temporal proximity between a statement and a subsequent event is not enough to create a disclosure claim.  For example, in *Yourish v. California Amplifier*, 191 F.3d 983, 997-98 (9th Cir. 1999), the Ninth Circuit affirmed dismissal of a Section 10(b) claim where plaintiffs alleged falsity based on allegations that "the temporal proximity of the August disclosure provides circumstantial evidence that the June and July optimistic statements were false when made."  *Id.* at 997.  Indeed, Plaintiffs' own cases support the point that temporal proximity alone cannot make up for a lack of other well-pleaded allegations of falsity.  *Gammel v. Hewlett-Packard Co.*, 2013 WL 1947525, at *20 (C.D. Cal. May 8, 2013) ("[W]hile temporal proximity could bolster the inference that [d]efendants' . . . statements were intentional, proximity alone was insufficient to establish that [d]efendants knowingly lied."); *In re Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096, 1112 (D. Nev. 1998) (explaining that timing and "the fact that there is no catastrophic event between the allegedly misleading statement and later inconsistent statement does not create a presumption that the [d]efendants actually knew the statements were false when made").  Plaintiffs may not rely on temporal proximity to make up for weak CW allegations.

> b.  *The Forward-Looking Statements Are Nonactionable Under the Bespeaks Caution Doctrine.*

Metagenomi's statements about its planned future collaboration with Moderna are forward-looking and, thus, protected by the bespeaks caution doctrine. (*See* Mem. Ex. A.)  A statement need not be wholly forward-looking to receive protection.  "When a statement includes both forward-looking and non-forward-looking statements, the challenged statements still fall within the safe harbor as forward-looking if, when examined as a whole, the challenged statements relate to future expectations and performance."  *Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1046

(N.D. Cal. 2019), *aff'd*, 847 F. App'x 368 (9th Cir. 2021); *In re Portal Software, Inc. Sec. Litig.*, 2005 WL 1910923, at *7 (N.D. Cal. Aug. 10, 2005) (explaining that the PSLRA safe harbor and bespeaks caution doctrine are "analogous"); *see also Kampe v. Volta Inc.*, 2024 WL 4534732, at *7 (N.D. Cal. Oct. 21, 2024) ("Where defendants make mixed statements containing non-forward-looking and forward-looking statements, the non-forward-looking statements are not protected by the safe harbor of the PSLRA."). Plaintiffs' own cases support this point. *See Vaxart*, 576 F. Supp. 3d at 671 (separating non-forward-looking and forward-looking portions of statements); *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 246 (2d Cir. 2016) (similar). *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1019 (S.D. Cal. 2005) (cited by Opp. at 15) is not to the contrary. There, the Court stated that if a "mixed" statement was challenged "as a whole," the Court can evaluate the statement as a whole. *Id.* at 1033. That is, if forward-looking statements *cannot* be separated out from non-forward-looking statements, the Court can look to the whole statement.

Metagenomi's risk disclosures were more than sufficient. The Opposition frames the disclosed risks as having "transpired," (Opp. at 16), but the AC pleads nothing to that effect. *See supra* at 3-9. As discussed above, the AC has not "ple[]d enough facts to undercut Defendants' positive statements." (*See* Opp. at 16; *supra* at 3-9.) The Opposition relies heavily on *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747 (9th Cir. 2023) but it is not on point. In *Glazer*, the plaintiff "identified two communications by" the company's potential merger partner affirmatively threatening not to close the transaction. *Id.* at 779. Here, Plaintiffs rely on nothing more than CWs' personal opinions and hearsay, not to support that Moderna *had* terminated (or had even threatened to terminate) the Agreement, but only to highlight strains in the working relationship. Thus, the allegations the Ninth Circuit relied on in *Glazer* are lacking here.

> **3.  The AC Does Not Allege that Statements About the PH1 Program Were False or Misleading and Those Statements Are Inactionable Forward-Looking Statements and/or Opinion.**

Defendants' statements about the PH1 program are not adequately alleged to be false or misleading and, to the extent they are forward-looking and/or opinion, are not actionable.

> *a.  No False or Misleading Statement.*

The AC does not adequately allege that Defendants' statements about the PH1 program, including statements about the timing of the program, were false or misleading when made. For instance, the AC does not allege that Metagenomi was *not* "in the final stages of confirming the candidate to be taken into NHP studies" at the time of the IPO. (*See* AC ¶ 52.) The Opposition, like the AC, relies on CW2's statements that, at the beginning of 2024, "no meaningful work had been done on" certain preparation efforts for NHP studies and that it "takes months of planning to execute trials with [NHP] models" to attempt to undercut Defendants' prediction that Metagenomi "expect[ed] to have NHP data in 2024 to support final development candidate selection." (Opp. at 18; AC ¶ 52.) But, CW2's purported "beliefs" of what CW2 thought "should" have been happening do not render these future expectations false. Defendants' statements were made at the beginning of 2024. Metagenomi had plenty of "months" ahead to obtain NHP data within its projected timeframe and within 2024.

This case thus stands in stark contrast to the Opposition's cases. For example, in *Sinnathurai v. Novavax, Inc.*, 645 F. Supp. 3d 495, 520 (D. Md. 2022), the Court found that once the defendant "chose to speak about the timeline for regulatory approval and the manufacturing process and effectively claimed that there were no remaining obstacles to obtaining approval and producing the vaccine, the failure to reference the contamination and purity issues at [certain] facilities that were causing delays could constitute material omissions." But here, the AC does not allege that there were any delays to or substantive issues with Defendants' timeline. In Plaintiffs' other cases, defendants failed to disclose adverse events or manufacturing setbacks. *See Kendall v. Odonate Theraps., Inc.*, 2021 WL 3406271, at *5 (S.D. Cal. Aug. 4, 2021) (defendants failed to disclose adverse events, contrary to the impression they created that their trial "was proceeding as expected, with no significant setbacks"); *In re Axsome Therapeutics, Inc. Sec. Litig.*, 2025 WL 965265, at *8 (S.D.N.Y. Mar. 31, 2025) (finding that defendants should have disclosed that its manufacturing vendor "was experiencing equipment problems that were causing an insufficient supply of [defendant's product] when describing the [c]ompany's manufacturing capabilities"). Here, the AC alleges no such concrete setbacks, only subjective opinions.

As discussed in Defendants' Memorandum, *Talis* is also instructive on this point. (Mem.

at 20 (citing *Talis*, 2022 WL 17551984, at *3, *12, *15).)  There, the Court found that a former employee's opinion that a timeline "was not possible" to be a conclusory accusation, insufficient to allege that the timeline was false or misleading.  So too here.  A conclusory opinion from one CW on potential future events that does not provide "any specific facts" is insufficient to render a forward-looking statement false or misleading.  *See Talis*, 2022 WL 17551984, at *15.  While the Opposition attempts to distinguish *Talis* by saying the AC has more facts (it doesn't), the AC still suffers from the same flaws as *Talis*—in both cases the pleadings rest on a conclusion that a timeline was impossible on the say-so of one unadorned CW's opinion.

The cases cited by the Opposition further illustrate this weakness in Plaintiffs' argument. (*See* Opp. at 18-19.)  In those cases, the plaintiffs relied on the defendants' own opinions, rather than those of confidential witnesses.  *See Rihn v. Acadia Pharms., Inc.*, 2016 WL 5076147, at *6 (S.D. Cal. Sept. 19, 2016) (plaintiffs relied on defendants' admission); *Odeh v. Immunomedics, Inc.*, 2020 WL 4381924, at *6 (D.N.J. July 31, 2020) (plaintiffs alleged that the company engaged counsel to investigate issues that were allegedly not disclosed).

b.  *Forward-Looking Statements Are Nonactionable Under the*

*Bespeaks Caution Doctrine.*

The bespeaks caution doctrine also applies to Metagenomi's forward-looking statements about its plans and expectations for the PH1 program.  Metagenomi's risk disclosures detailed the risks to its drug development programs.  (*See* Mem. at 5-6, 16-17, 21; *see, e.g.*, AC, Ex. 2 at 56 ("disagreements with collaborators . . . might cause delays or terminations of the research, development or commercialization of product candidates"); *id.* ("may elect not to continue or renew development programs");  *id.* at 46 (warning NHP trials may be delayed if Metagenomi was "unable to obtain NHPs in sufficient quantities and in a timely manner").)  Plaintiffs, thus, "cannot be heard to complain" when those risks ultimately came to pass after the IPO.  *See In re Twitter, Inc. Sec. Litig.*, 506 F. Supp. 3d 867, 883 (N.D. Cal. 2020), *aff'd sub nom. Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611 (9th Cir. 2022).[3]

---

[3] And as discussed above, the AC does not plausibly allege that these risks had materialized at the time of the IPO.  *See supra* at 11-12.

The Opposition argues that the risk factors in the Registration Statement "do[] not suffice" but does not explain why such highly specific language that names the Agreement is not sufficient. (*See* Opp. at 20.) Contrary to the Opposition's argument, (Opp. at 20), *Kovtun v. VIVUS, Inc.*, 2012 WL 4477647 (N.D. Cal. Sept. 27, 2012), is instructive in its finding that cautionary language to the effect that a defendant "might have problems that could cause it to cancel clinical trials" was sufficient to warn of risks that FDA could deny the defendant-company's new drug application when FDA later did just that. *Id.* at *2, *12. The same is true here. In addition to its warnings about the risk of the Moderna collaboration ending, Metagenomi specifically warned that "[c]linical drug development involves a lengthy and expensive process, with an uncertain outcome." (AC, Ex. 2 at 25; *see also* Mem. at 5-6, 21 (discussing Metagenomi's risk disclosures).) The ultimate end of the Metagenomi/Moderna relationship was a materialization of a risk about which Metagenomi had warned and which the AC does not plausibly allege had already occurred.

### c. Opinion Statements are Nonactionable.

Finally, Defendants' statements about the PH1 program include nonactionable opinion. Like those made here, statements about scientific pursuits are often found to be subjective opinions. *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 543-44 (S.D.N.Y. 2015) (explaining that scientific opinions are opinions), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016). The Opposition does not argue that Defendants' opinion statements are misleading because Defendants did not "actually hold the stated belief." *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 184-86, 189 (2015) (explaining that where a plaintiff "explicitly excludes and disclaims any allegation sounding in fraud or deception," the plaintiff may not allege that either defendants did not genuinely hold their stated beliefs or that the supporting facts were untrue). Instead, the Opposition only argues that Defendants' opinions about its expectations for the PH1 program "lack[ed] a reasonable basis." (Opp. at 21.) The AC does not plausibly allege facts to support this conclusory allegation.

"An opinion statement . . . is not misleading simply because the issuer knows, but fails to disclose, some fact cutting the other way." *Omnicare, Inc.*, 575 U.S. at 176. CW2's personal

opinion about conducting NHP studies is hardly a "fact." (*See* AC ¶ 53 (". . . CW2 believes . . ."); *id.* ("In CW2's professional experience . . .").) One person's belief does nothing to suggest that the Defendants lacked a "reasonable basis." *See Talis*, 2022 WL 17551984, at *15 (rejecting CW opinion allegations). In *Ferraro Family Foundation, Inc. v. Corcept Therapeutics Inc.*, 501 F. Supp. 3d 735, 761-62 (N.D. Cal. 2020), the Court rejected a stockholder's argument that the company's opinion statements (there, about regulatory compliance) were rendered misleading based on anecdotal pleading of some indications to the contrary. As the Court explained, "[p]laintiffs' failure to plead a company-wide [regulatory violation]" and "[t]he small number of [examples of noncompliance] that [p]laintiffs have adequately pled is insufficient to render [d]efendants' statements objectively incorrect." *Id.* at 762. So too here—the AC's pleading of a single CW who disagreed with Metagenomi's timeline estimate for PH1 (CW2) is insufficient to plead that that timeline was without reasonable basis.

The Opposition's other cases on this point are distinguishable because, in each case, the plaintiff relied on far more than the one-off opinion of a confidential witness. *See Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1017 (N.D. Cal. 2020) (allegations that defendants' public filings did not comply with accounting principles); *In re Intuitive Surgical Sec. Litig.*, 2017 WL 4355072, at *2-3 (N.D. Cal. Sept. 29, 2017) (defendants allegedly received letters about the flaw in their product and were subject to product liability suits); *Bos. Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *6 (N.D. Cal. Aug. 7, 2020) (defendants allegedly knew that their "playbook" was illegal but "viewed paying fines for violating local laws, or bribes for avoiding those fines, as a cost of doing business"); *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 211(E.D. Pa. 2021) (administrative law judge previously found the company "ha[d] made deliberate managerial decisions" contrary to their public statements).

### B.      Defendants Did Not Violate Item 105.

The AC does not plead facts sufficient to support a claim under Item 105. "To state a claim under Item 105, a plaintiff must allege that [Defendants] knew, at the time of the IPO, but did not disclose" the matter to investors. *ContextLogic*, 2023 WL 6536162, at *13; *see also Wandel v. Gao*, 590 F. Supp. 3d 630, 646 (S.D.N.Y. 2022) ("To state a claim under Item 105, an

issuer must *know*, at the time of the IPO, about an undisclosed risk factor . . . .").  Plaintiffs cannot have it both ways.  They either disclaim fraud or intent, (*see* Opp. at 8), or bring an Item 105 claim that sounds in fraud and requires that the AC be analyzed under Rule 9(b).  (*See supra* at 2-3.)

Moreover, as discussed in the Memorandum, Defendants fulfilled their duty to disclose "material factors that make an investment in the registrant or offering speculative or risky." (Mem. at 23 (citing 17 C.F.R. § 229.105).)  Defendants provided detailed disclosures about the risks that the Agreement and the Moderna collaboration could end and the risks associated with ongoing studies of drug candidates.  (Mem. at 5-6.)  The Opposition argues that this is not enough because those "risks had already materialized before the IPO."  (Opp. at 23.)  But the AC simply does not plead that this was the case.  (*See supra* at 3-9.)  Because "Plaintiffs have not plausibly pleaded the factual allegation underlying their claim:" *i.e.*, that the Agreement was terminated at the time of Metagenomi's IPO, "Plaintiffs' Item-105 claim fails as a matter of law."  *See Waswick v. Torrid Holdings, Inc.*, 2024 WL 3740052, at *9 (C.D. Cal. July 23, 2024).

**C.** **The AC Does Not Plead a Loss Caused by the Revelation of a "Truth" About the Challenged Statements.**

The AC also pleads, on its face, that no correction of any of the alleged misstatements or omissions caused the stock to drop.  The Opposition argues that at the time of Metagenomi's IPO, "the Agreement was effectively over."  (Opp. at 24-25.)  But, as discussed above and in the Memorandum, the AC does not plead that at all.  (*See* Mem. at 24-25; *supra* at 3-9.)  Accordingly, "Plaintiffs do not allege that [Defendants' May 2024 statements discussing the termination of the Agreement] relate back to pre-IPO information in the Registration statement."  *See Hoang v. ContextLogic, Inc.*, 2024 WL 4471316, at *13 (N.D. Cal. Aug. 22, 2024).

**III.** **The AC Does Not Plead a Claim Under Section 15.**

Because Plaintiffs' Section 15 claim is derivative of their Section 11 claim, if the Section 11 claim is dismissed, the Section 15 claim must be dismissed as well.  *See Pirani v. Slack Techs., Inc.*, 127 F.4th 1183, 1193 (9th Cir. 2025).

**CONCLUSION**

Defendants respectfully request that the Court dismiss the AC with prejudice.

Dated:  July 25, 2025

Respectfully submitted,

By: /s/ *Jonathan A. Shapiro*
JONATHAN A. SHAPIRO (SBN 257199)
*JShapiro@goodwinlaw.com*
**GOODWIN PROCTER** LLP
525 Market Street
San Francisco, CA 94105
Phone: +1 415 733 6000
Fax: +1 415 677 9041

CAROLINE H. BULLERJAHN (*pro hac vice*)
*CBullerjahn@goodwinlaw.com*
TUCKER DEVOE (*pro hac vice*)
*TDeVoe@goodwinlaw.com*
**GOODWIN PROCTER** LLP
100 Northern Avenue
Boston, MA 02210
Phone: +1 617 570 1000
Fax: +1 617 523 1231

*Attorneys for Defendants:*
*Metagenomi, Inc., Brian C. Thomas, Pamela Wapnick, Juergen Eckhardt, Sebastian Bernales, Risa Stack, and Willard Dere*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **July 25, 2025**.  I further certify that all participants in the case are registered CM/ ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **July 25, 2025**.

/s/ *Jonathan A. Shapiro*
JONATHAN A. SHAPIRO