POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movant Mingxi Bi
and Proposed Co-Lead Counsel for the Class*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| KEVIN VREELAND, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>METAGENOMI INC., BRIAN C. THOMAS, PAMELA WAPNICK, JUERGEN ECKHARDT, SEBASTIAN BERNALES, RISA STACK, and WILLARD DERE,<br><br>Defendants. | Case No.: 5:24-cv-06765-EKL<br><br>SUPPLEMENTAL BRIEF REGARDING NINTH CIRCUIT DECISION *SODHA V. GOLUBOWSKI*, CASE NO. 24-1036, IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS<br><br>———————<br><br><u>CLASS ACTION</u><br><br>Judge:  Hon. Eumi K Lee<br>Courtroom:  7 – 4th Floor |

**I.    *SODHA* SUPPORTS PLAINTIFFS' SECTION 11 AND AN ITEM 303 CLAIM.**

Prior to its IPO, in Q1 2021, Robinhood experienced significant revenue growth due to extensive trading of "meme stocks."  However, Robinhood's pre-IPO interim Q2 results showed that revenue was declining after this wave, and Robinhood's Prospectus omitted those interim Q2 results. After the IPO, when Robinhood reported lower revenue in Q3, Robinhood's stock fell, causing losses.  Op. 22.  Plaintiffs asserted that the Prospectus was misleading pursuant to Section 11 and violated Item 303 in failing to disclose the interim Q2 revenue reductions.  The district court (applying an onerous test requiring disclosure only if the interim results are an "extreme departure" from past results) dismissed both claims, and the Ninth Circuit reversed.

The *Sodha* Court held that "'where the disclosure duty arises from the combination of a prior statement and a subsequent event, which, if not disclosed, renders the prior statement false or misleading," there is a duty to disclose if the omitted information is "material."  Op. 29.

Plaintiffs' Section 11 claim falls squarely within this framework.  As in *Sodha*, there was a statement regarding a particular time period, in this case Metagenomi's once-productive relationship with Moderna (entered into by contract in 2021), and there was an event subsequent to that time period that rendered the original statement misleading, namely (starting in mid-2023) that the relationship with Moderna had deteriorated to the point that the two companies were no longer actively collaborating by the 2024 IPO. AC¶¶37-53.  The Prospectus also lauded the joint Moderna PH1 program as successful, ongoing, and going to result in more milestone data by the end of the year, but subsequent events (the end of the collaboration and the lack of any meaningful progress on that program by the time of the IPO) were omitted.  AC¶¶51-53.

Under *Sodha*, Metagenomi was obligated to disclose these changes in the relationship with Moderna insofar as Metagenomi's relationship to Moderna and its progress on its joint projects with Moderna were "material."  There is no doubt these omissions—of a collaboration valued at ***$3 billion*** that Metagenomi's IPO had framed as "***a critical part of [Metagenomi's] core thesis***" (AC¶55))—were material, and Defendants never argued otherwise.  Plts' MTD Opp. 17.[1]

*Sodha* also recognized that a registrant would have to disclose "existing problems" that could delay its products in development, stating there is a "key 'difference between knowing that

---

[1] To be clear, Plaintiffs do not require *Sodha*'s ruling to prevail; Plaintiffs also claim Metagenomi's Prospectus statements were false and misleading given facts about the ended Moderna relationship in place at the time of the statements and thus are not relying solely on subsequent events.

SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
5:24-cv-06765-EKL

any product-in-development may run into a few snags, and knowing that a particular product has already developed problems so significant as to require months of delay.'" Op. 30 fn.5. As alleged, that is the case with misrepresentations about the joint PH1 program's timeline given, at the time of the IPO, the relationship was nonexistent, and no meaningful work accomplished.

Furthermore, *Sodha's* analysis of Item 303 disclosures provides an additional basis to sustain Plaintiffs' Section 11 claim.[2] *Sodha* holds that material "trends" that impact the business of the company must be disclosed. Op. 36-37. *Sodha* also clarifies that businesses must disclose not just trends, but also "events" and "uncertainties." Op. 38-39. The deterioration of the relationship between Metagenomi and Moderna constitutes both a "trend" and an "event" that gives rise to the disclosure requires of Item 303. Moreover, *Sodha* clarifies that "Item 303 imposes a broader duty of disclosure than Section 11's 'misleading' prong." Op. 42. As previously discussed, the Moderna relationship status was highly material to Metagenomi's operations. Thus, Metagenomi had a duty to disclose this information, and failed to do so.

## II. *SODHA'S* REJECTION OF THE ITEM 105 CLAIM IS DISTINGUISHABLE.

Plaintiffs argued that Robinhood had violated Item 105 by merely warning that future Q3 revenues would be lower, rather than disclosing that the interim Q2 results were already lower, *i.e.*, that the warned-of risk (lower revenues, due in part to crypto meme volatility) was "present[ed] … as contingent when" it had "already" materialized. Op. 43. The Court held that while "[t]o be sure, presenting past harms as contingent future risks may be misleading," they "cannot, **standing alone**, violate Item 105" where those future risks otherwise are "sufficiently disclosed" and with the requisite "specificity." Op. 43-44. That is not the case here.

Unlike Robinhood's adequate disclosures, Metagenomi's risk factors were not only misleadingly portrayed as contingent[3] but lacked the same level of specificity describing the nature of the risk. Robinhood's IPO Prospectus "repeated[ly]" had "sufficiently disclosed" the precise, future risk that later materialized (that revenue and "performance during the third quarter of 2021 would be lower" (Op. 18) driven in part by fluctuating crypto meme stocks) with a high degree of "specificity." *E.g.*, Op. 14 ("Trading activity was particularly high" in Q1 and "*[w]e expect* our

---

[2] *E.g.*, *Ransom v. Sec. of the Navy*, 1992 U.S. App. LEXIS 27274, at * 9 (9th Cir. Oct. 19, 1992) (court should "deny a motion to dismiss if the allegations provide for relief on any possible legal theory, whether or not raised by the plaintiff.").

[3] The Court also noted "presenting past harms as contingent future risks … may be actionable under Section 11's 'misleading' prong." Op. 44. That is the case here.

SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
5:24-cv-06765-EKL

revenue for [Q3] … ***to be lower*** … as a result of decreased levels of trading activity relative to the record highs in trading activity, particularly in cryptocurrencies"); Op. 18 ("***We anticipate*** the rate of growth in … Key Performance Metrics ***will be lower*** [in Q3] … due to the [prior and unusual] exceptionally strong interest in trading, particularly in cryptocurrencies"); Op. 17 ("Our revenue growth rate ***is likely to decline*** in future periods"); ("***we expect*** the growth rates in revenue … ***to decline*** in future periods, and such declines could be significant"). These disclosures describe in detail the precise nature of the risk (lower growth due to unusually high prior trading fervor, particularly from meme stocks), whereas Metagenomi's risks factors (*e.g.*, that "disagreements with collaborators … might cause delays or terminations") do not contain ***any*** warnings specifically about the Moderna relationship (referring generically to "collaborators") or the joint Moderna PH1 program (*e.g.*, no warning about the "delay" in the PH1 program). Nor did it warn of the "specific risks" of Moderna terminating due to the known issues with Metagenomi's performance (including Moderna's curtailing of communications and de-funding projects), or even generally of its collaborators pulling out of their agreements due to Metagenomi's failures and challenges in meeting Moderna's requirements. AC¶¶37-53; *Mingbo Cai v. Switch*, 2019 WL 3065591, at *6 (D. Nev. July 12, 2019) ("general statements that the company faced risks associated with" sales lacked "specific risks arising from" particular "new sales strategy").

Second, unlike Metagenomi couching the generic risks as something that "may" happen, Robinhood's disclosures offered more certainty in describing the risk as one that is "expected," "anticipated," and even "likely to" occur. *Supra*. This made the Robinhood risks less "speculative" (17 CFR. § 229.105(a)); investors cannot complain about not appreciating this risk admittedly likely to happen. In contrast, given that (from mid-2023) Moderna had "consistently rejected" Metagenomi's performance metrics and proposals, "a jury could find that the ventures dependent on that proposal were speculative in a way not identified by the disclosure that 'failure … could have an adverse impact on" Metagenomi's business. *Roseville Employees v. EnergySol.*, 814 F.Supp.2d 395, 426-27 (S.D.N.Y. 2011); AC¶70 ("If these collaborations are not successful, our business could be adversely affected."). Relatedly, the risk that investor "attention" for "meme-stocks" will shift is one well understood (and implied by the name, meme-stock). *Cf.* Op. 46. Here, the information about the imminent risk of termination given the deterioration of the joint relationship was solely within Metagenomi's knowledge and control. This risk is precisely the kind of information Item 105 requires.

Dated: September 9, 2025

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
Samantha Daniels
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
sdaniels@pomlaw.com

*Counsel for Lead Plaintiff Movant Mingxi Bi
and Co-Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(admitted *pro hac vice*)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

Michael J. Boyle, Jr. (SBN 258560)
4200 Regent Street, Suite 200
Columbus, Ohio 43219
Telephone: (614) 578-5582
mboyle@bgandg.com

4

*Counsel for Lead Plaintiff Movant Mingxi Bi
and Co-Lead Counsel for the Class*

**PROOF OF SERVICE**

I hereby certify that on September 9, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

*/s/ Jennifer Pafiti*
Jennifer Pafiti

SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
5:24-cv-06765-EKL