UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| KEVIN VREELAND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>METAGENOMI INC., et al.,<br><br>Defendants. | Case No.  5:24-cv-06765-EKL<br><br>**ORDER GRANTING MOTION TO DISMISS IN PART**<br><br>Re: ECF No. 40 |

Plaintiffs allege that Defendant Metagenomi Inc. made false and misleading statements and failed to disclose material risks in the registration statement for its initial public offering ("IPO"). *See* First. Am. Compl., ECF No. 1 ("Compl.").  The crux of the complaint is that Metagenomi touted the strength and progress of a collaboration agreement with Moderna, a leading biotechnology company, when in fact the collaboration agreement was "falling apart."  *Id*. ¶¶ 2-4. Plaintiffs assert claims under Sections 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77o, against Metagenomi and its chief executive officer, chief financial officer, and members of its board of directions ("Individual Defendants").  *Id*. ¶¶ 1, 17-21.  Having reviewed the parties' submissions, the Court finds this matter suitable for disposition without oral argument.  *See* Civil L.R. 7-1(b).  For the following reasons, the motion is GRANTED in part and DENIED in part as explained below.[1]

Metagenomi is a "genetic medicines company" that leverages genome editing tools to identify and develop therapies for genetic diseases.  *See* Compl. ¶ 2; *see also* Compl. Ex. 2 at 139-140, ECF No. 39-3 ("IPO Prospectus").  At the time of Metagenomi's IPO in February 2024, each

---

[1] This order assumes the reader's familiarity with the relevant facts, legal standards, and the parties' arguments.  The facts are drawn from the complaint and documents attached thereto.

United States District Court
Northern District of California

project in the company's pipeline was in an early discovery or preclinical phase – *i.e.*, Metagenomi had not fully developed or commercialized a genetic medicine.  IPO Prospectus at 131-132 ("[W]e do not currently have any approved products and all of our product candidates are preclinical[.]").  Thus, Metagenomi's collaboration agreements with more established biotechnology companies were a critical feature of the company's value proposition to investors.  *See id.* at 111 ("To date, all of our revenue consists of collaboration revenue, earned from collaboration agreements with Moderna, Ionis and Affini-T.").

The Moderna collaboration agreement was particularly significant to Metagenomi's prospects.  Metagenomi and Moderna agreed to collaborate on three programs to develop and commercialize certain genome editing therapies.  *Id*. at 103-104.  At the time of the IPO, Metagenomi and Moderna had been collaborating for more than two years through joint committees that oversaw the collaboration efforts.  *See id*. at 103.  Prior to the IPO, Metagenomi had already received a total of $49.6 million through the Moderna collaboration agreement, which included upfront payments and funds to cover research costs.  *Id*.  Metagenomi also stood to gain hundreds of millions of dollars upon completion of certain technology, development, regulatory, and sales milestones, as well as royalties on the sales of licensed products that resulted from the collaboration.  *Id*. at 104.  But on May 1, 2024, less than three months after the IPO, Metagenomi and Moderna announced that they had "mutually terminated" their collaboration agreement.  Compl. Ex. 5, ECF No. 39-6.  Metagenomi's stock price declined from $7.04 to $6.17 over the next trading day.  Compl. ¶ 57.

Plaintiffs claim that Metagenomi's registration statement misled investors by failing to disclose the true state of collaboration between Metagenomi and Moderna and by failing to adequately disclose certain risks.  To state a Section 11 claim, Plaintiffs must plausibly allege "(1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) (citation modified).  Alternatively, Plaintiffs may state a Section 11 claim by plausibly alleging that Defendants failed to affirmatively disclose a material risk in violation of

Item 105 of Regulation S-K, 17 C.F.R. §229.105. Because Plaintiffs' Section 11 claim is not "grounded in fraud," the Rule 9(b) heightened pleading requirements do not apply.[2] *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 885 (9th Cir. 2012).

Most of the challenged statements are not adequately alleged to be false or misleading. *See* Compl. ¶¶ 30-32 (identifying the challenged statements); *see also* Mot. Ex. A, ECF No. 40-1 (adding context to challenged statements). For example, Plaintiffs claim that it was misleading for Metagenomi to state that it "will collaborate" with Moderna on research and development programs pursuant to their collaboration agreement. *See* Compl. ¶ 30. According to Plaintiffs, these statements conveyed that the two companies "would actively collaborate on a series of projects," when in fact their relationship "had significantly deteriorated." *Id*. ¶¶ 62-63. But when viewed in context, these statements did not make any representations regarding the current or future state of collaboration efforts between Metagenomi and Moderna. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 196 (2015) (explaining that courts "must address the statement's context"); *see also Sneed v. Talphera, Inc.*, 147 F.4th 1123, 1131 (9th Cir. 2025) (explaining that "[c]ontext matters" when evaluating a statement's potential to mislead). Instead, the statements merely summarize "the terms of the Moderna Agreement" and identify the areas of collaboration. IPO Prospectus at 103-104. Moreover, Metagenomi accurately disclosed that Moderna had "a right to opt-out" of the research programs at any time. *Id*. Therefore, generic statements that Metagenomi and Moderna "will collaborate" were not false or misleading. *See In re Facebook, Inc. Sec. Litig*., 87 F.4th 934, 948 (9th Cir. 2023).

However, Plaintiffs do plausibly allege a Section 11 claim in two respects. First, the registration statement made a more detailed representation about the expected future progress of the Moderna collaboration. The registration statement represented that Metagenomi and Moderna had "achieved preclinical proof-of-concept" for treating a metabolic disease known as PH1, and

---

[2] Plaintiffs' claims are not "inherently fraud-based" because Plaintiffs do not allege that Defendants acted knowingly or intentionally. *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 545 (N.D. Cal. 2009). The allegations in the complaint are consistent with negligence, and Plaintiffs "specifically disclaim any allegations that are based on fraud, recklessness, or intentional misconduct." Compl. ¶ 82; *see also id*. ¶ 24 ("Plaintiffs do not allege nor claim to have information supporting a claim for intentional or fraudulent misconduct.").

United States District Court
Northern District of California

3

United States District Court
Northern District of California

the parties were "in the final stages of confirming the candidate to take into [non-human primate 'NHP'] studies and expect to have NHP data in 2024 to support final development candidate selection." IPO Prospectus at 5, 133. However, two confidential witnesses – former Metagenomi employees who were directly involved in the collaboration program – state that, at the time of the IPO, "no one from either side" was attending the "regular bi-weekly meetings," and "communication between Metagenomi and Moderna stopped" altogether. Compl. ¶¶ 44-45, 47-48. If these allegations are true, it was misleading to state that Metagenomi expected the collaboration to progress further toward NHP studies and the selection of a final development candidate while omitting the total breakdown of its relationship with Moderna. *See Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 779 (9th Cir. 2023) (finding it misleading for a defendant to state that it expected a merger to close while omitting that the merger counterparty "was considering not closing the merger"). Moreover, Metagenomi's statement is not protected by "the safe harbor for forward-looking statements" because the registration statement did not meaningfully disclose the alleged breakdown in the Moderna collaboration. *Id.* at 780-81.

Second, Plaintiffs plausibly allege that the risk disclosures in the registration statement were misleading because they discussed the abandonment of collaboration efforts as an unrealized risk, but the risk had "already materialized" with respect to Moderna. *Id.* at 781. The registration statement warned generally about "disagreements with collaborators"; the possibility that collaborators may "delay," "provide insufficient funding for," or "abandon" clinical trials and product candidates; and the fact that "collaborations may be terminated for the convenience of the collaborator." IPO Prospectus at 55-56. But the registration statement did not disclose that Moderna had already abandoned the collaboration agreement, as Plaintiffs claim. It is plausible that this omission could "mislead reasonable investors."[3] *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th

---

[3] Plaintiffs also allege that the risk disclosure violates Item 105, which is an independent theory of liability under Section 11. However, this theory fails because "mischaracterizing a past harm as a future risk cannot, standing alone, violate Item 105." *Sodha v. Golubowski*, 154 F.4th 1019, 1042 (9th Cir. 2025), *petition for cert. filed sub nom., Robinhood Mkts., Inc. v. Sodha* (U.S. Feb. 5, 2026) (No. 25-944). Plaintiffs also allege that Metagenomi failed to disclose that its chief science officer may depart the company. Compl. ¶ 73. However, Metagenomi sufficiently disclosed that it was "highly dependent" on the "principal members of [its] management and scientific teams," and that such employees may leave at any time, which may impede the company's "research,

687, 703-04 (9th Cir. 2021); *see also In re ON24, Inc. Sec. Litig.*, No. 24-2204, 2026 WL 45259, at *2 (9th Cir. Jan. 7, 2026).

Plaintiffs plausibly allege that the omissions described above would be material to a reasonable investor. An omitted fact is material if "there is a substantial likelihood that a reasonable investor would consider it important." *Omnicare*, 575 U.S. at 196 (citation modified). Here, the Moderna collaboration agreement was among Metagenomi's most important prospects. Historically, it accounted for more collaboration revenue than Metagenomi's other agreements and accounted for about 43% of its collaboration revenue in the year preceding the IPO. IPO Prospectus at 114. Through the collaboration agreement, Metagenomi was able to "leverage Moderna's expertise" and stood to gain hundreds of millions of dollars in future payments and royalties. *Id*. at 184. Given the significance of the Moderna collaboration to Metagenomi's operations and future success, it is substantially likely that a reasonable investor would find it important that Moderna had ceased communicating with Metagenomi, as Plaintiffs allege.

Defendants argue that Plaintiffs cannot establish that their losses were caused by the omissions. "[L]oss causation is not an element of the *prima facie* case under Section 11, but defendants may assert a *lack* of loss causation as an affirmative defense." *Charles Schwab*, 257 F.R.D. at 546. Defendants bear a "heavy burden" to establish this defense, particularly at the pleading stage. *Stephens v. Maplebear Inc.*, No. 24-cv-00465-EJD, 2025 WL 1359125, at *9 (N.D. Cal. May 9, 2025) (citing *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 860 (9th Cir. 2013)). Defendants must show that the depreciation in value of Plaintiffs' stock resulted from factors other than the omission. *See Hildes*, 734 F.3d at 860. By contrast, Plaintiffs need only show that the omission or misrepresentation "touches upon the reasons for an investment's decline in value." *Id*. at 861 (citation modified). Defendants have not met their burden here. As alleged in the complaint, the registration statement gave investors the impression that the Moderna relationship was productive, but at the time, Moderna had already abandoned the partnership. Metagenomi and Moderna ultimately disclosed the termination of their partnership on May 1,

---

development and commercialization objectives." IPO Prospectus at 63. Thus, Plaintiffs have not alleged a Section 11 claim premised on an Item 105 violation.

United States District Court
Northern District of California

5

2024, and Metagenomi's stock price dropped during the next trading day. These allegations are sufficient.

Finally, Plaintiffs assert a Section 15 claim against the Individual Defendants for their roles in controlling Metagenomi. Compl. ¶¶ 18-23; *see also Charles Schwab*, 257 F.R.D. at 550 (explaining that Section 15 "imposes joint and several liability upon every person who controls any person liable under" Section 11). The only challenge Defendants raise to the Section 15 claim is that it lacks an underlying Section 11 violation. *See Rigel*, 697 F.3d at 886. Because Plaintiffs plausibly state a Section 11 claim, the Section 15 claim survives as well.

***

For the foregoing reasons, Plaintiffs plausibly allege Section 11 and Section 15 claims based on the misleading statements and omissions described above. The motion to dismiss is denied with respect to those statements. However, the motion is granted with respect to all other statements, and with respect to Plaintiffs' alternative theory that the registration statement violates Item 105. Because this is the Court's first ruling on the sufficiency of the complaint, Plaintiffs may file a second amended complaint by **April 27, 2026**. Defendants' responsive pleading is due 30 days after the second amended complaint is filed, or if Plaintiffs choose not to amend, 30 days after the deadline to amend. An initial case management conference is scheduled for **May 20, 2026**. The parties shall file a joint case management statement by **May 6, 2026**.

**IT IS SO ORDERED.**

Dated: March 24, 2026

Eumi K. Lee
United States District Judge

United States District Court
Northern District of California